## CARTER V. STATE.

A contract made with the state to do the class of printing specified therein, under the provisions of chapter 99, Laws 1891, which does not contain any stipulation prohibiting its assignment, may be assigned.

(Syllabus by the Court.  Opinion filed Dec. 31, 1895.)

Action to recover damages for breach of contract. Demurrer to first cause of action overruled, and sustained as to second cause of action.

The facts are stated in the opinion.

*Carter & Donahue,* for plaintiff.

Where a contract has been assigned by one party, the acceptance by the other of the benefit under such contract is a ratification of the assignment. Devlin v. Mayor, 63 N. Y. 8; Horner v. Wood, 23 *Id.* 354; Cutting v. Packers, 10 Law R. 369.

*Coe I. Crawford* (Attorney General), for defendant.

Upon a proceeding to establish a claim for damages caused by not fulfilling a contract for printing, the facts, all the requirements of the law necessary to the creation of a valid claim must affirmatively appear upon the face of the complaint. Vincent v. Umalilla, 14 Oregon, 375; People v. Swegart, 107 Ill. 495; People v. Ryland, 14 Nev. 46; Martin v. Mott, 12 Wheat. 19; Vanderhay v. Young, 11 John. 179; People v. Parker, 3 Neb. 409. A party cannot be wronged or aggrieved in law by the lawful act of the auditor in refusing to audit a claim, or draw a warrant where no appropriation has been made to meet it. Galbes v. Gerard, 46 Fed. 500; Callius v. State, 51 N. W. 776; Railroad v. State, 10 *Id.* 560; *In re* Limitation of Taxation, 54 *Id.* 419; State v. Burdick, 28 Pac. 146; Curtis v. Moody, 27 *Id.* 732.

CORSON, P. J.  This is an original action, brought by the plaintiff, as assignee, against the state, pursuant to the provisions of chapter 1, Laws 1890, to recover damages for the al-

leged breach of two contracts for printing, entered into by the secretary of state as *ex officio* commissioner of public printing. The complaint contains two causes of action, to each of which the state, by its attorney general, has interposed a demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action. The only question, therefore, before us for decision is as to the sufficiency of the complaint.

For the first cause of action it is alleged that plaintiff's assignor was and is a corporation organized under the laws of this state; that on the first day of June, 1892, the then secretary of state and *ex officio* commissioner of public printing, in accordance with the provisions of Chapter 99, Laws 1891, advertised for proposals for the printing of the reports of the state officers and other official documents therein designated for a period of one year; that the Free Press Company, by this plaintiff, as its business manager, made proposals for such printing, and, being the lowest bidder, was awarded, the contract therefor; that a contract was duly executed by the said commissioner of public printing and the said Free Press Company for said printing, and to secure the faithful performance of said contract on its part the said Free Press Company executed a bond with good and sufficient sureties as required by law; but subsdquently the said Free Press Company assigned said contract to the plaintiff herein, who thereupon proceeded to secure a large amount of type, paper, and other material necessary for the purpose of carrying out the provisions of said contract. It is further alleged that the plaintiff has in all things complied with the terms of the contract stipulated to be performed by the said Free Press Company, and has printed all reports and documents as required by the said commissioner of public printing, of the class designated in said contract, except the report of the state auditor, the report of the inspector of mines, and the report of the secretary of the pharmaceutical association, copies of which were not furnished the plaintiff, but were by said officers caused to be printed by other par-

ties, by reason of which the plaintiff was deprived of said print-
ing, and suffered damage thereby in the sum of $774.40.

The second cause of action is similar to the first, except
that the contract is alleged to have been made with one William
G. Yates, and was for printing "circulars, blanks, letter heads,
note heads, envelopes, list of standing committees, roll calls,
resolutions, blanks, blank reports of committees, names of
members of legislature, labels for desks, signs for committees,
cards and blanks of all kinds for the use of the state officers
and the legislature of the state of South Dakota for the period
of one year from July 1, A. D. 1892, including incidental print-
ing for the legislature in said year; and to furnish the material
and perform the labor in producing the same."

The complaint further alleges:  "That said Yates, as said
plaintiff is informed and believes, did all the printing for the
said state officials under his said contract that he was furnished
copy or orders for, and was ready and willing to do all that his
contract called for for said officials, but that there was a large
amount of printing to be done for said officials which said Yates
was entitled to do under his contract, and was ready and anx-
ious to do the same, to-wit."  Here follows a specification of
the amounts of printing that he, plaintiff, claims was to be
done for the different state officials, amounting to the sum of
$4,650.  The plaintiff further alleges:  "That said Yates, as
said plaintiff is informed and believes, notified said Ringsrud,
and also those state officials above named, that he was ready to
do all their printing that his contract called for, and requested
that he be furnished with their copy or orders for the same, but
they failed to furnish him with said copy or orders; wherefore
the said Yates was damaged in the sum of $4,650, being the
amount to which he was entitled under his said contract with
said defendant."  The complaint further alleges that said Yates
duly presented his claim to the state auditor for allowance, and
that he refused to allow the same, and that prior to the com-
mencement of this action the said Yates duly assigned his said

claim to this plaintiff. The plaintiff concludes by demanding judgment for the sum of $5,424.40, the total amount of damages alleged to have been sustained by the breach of the contracts above set forth.

The learned attorney general contends in support of his demurrer to the first cause of action: "That the right of the Free Press Company, under its contract, to print the reports of the state auditor, the inspector of mines, and the State Pharmaceutical Association, could not be assigned to Arthur L. Carter, the plaintiff hearin. The right was a personal one, belonging alone to the Free Press Company. The proposal and specifications came from the Free Press Company, and were accepted, and a personal contract entered into between the state and the Free Press Company. The Free Press Company gave a bond for the faithful performance of this contract, the condition of which was that, if the Free Press Company should well and truly perform said contract, and in all things comply with the same, the contract should be null and void; otherwise in full force and effect." This contention is, in our opinion, untenable. There is no stipulation in the contract prohibiting the Free Press Company from assigning the same, and we discover nothing in the nature of the contract, or in public policy, that would prevent such an assignment, so long as the state retained the obligation of the original contractor and its sureties for its faithful performance of the contract. As said by the court of appeals of New York in Devlin v. Mayor, etc., 63 N. Y. 8: "The assignability of a contract must depend upon the nature of the contract and the character of the obligations assumed, rather than the supposed intent of the parties, except as that intent is expressed in the agreement. Parties may, in terms, prohibit the assignment of any contract, and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations. But when this has not been declared expressly or by implication, contracts other than such as are personal in their

character—as promises to marry, or engagements for personal services requiring skill, science, or peculiar qualifications— may be assigned, and by them the personal representatives will be bound. * * * When the contract is executory in its nature, and an assignee or personal representative can fairly and sufficiently execute all that the original contractor could have done, the assignee or representative may do so, and have the benefit of the contract."

In that case the city of New York had entered into a contract for sweeping the streets of that city, with one Hackley, who had assigned the contract to the plaintiff in that action. The assignee was prevented by the officials of the city from completing his contract, and one of the defenses of the city to an action for a breach of the contract was that said Hackley could not legally assign the contract. The court, therefore, in its opinion, discusses at great length the assignability of this class of contracts, and arrives at the conclusion that there was nothing in the nature of the contract or in public policy prohibiting such an assignment. There is, in our opinion, no element of personal contract, in the sense in which that term is ordinarily used, in the contract in controversy, as is quite apparent from an examination of the law under which the contract was executed. The secretary of state, as *ex officio* commissioner of public printing, is required to advertise for proposals for the several classes of printing, and he is required to accept the lowest responsible bid consistent with good work, etc., and the only limitation is that contracts shall not be let to parties outside of the state. It will thus be seen that the question of the personal qualifications of the contract or does not enter into the contract. The contract is not for the personal services of the contractor, and he may do the work through agents or assignees. Whether such agent acts under a naked power or a power coupled with an interest cannot affect the character or vary the effect of the delegation of power by the original contractor. Had the contract in this case been made with an

individual instead of a corporation, there could be no doubt that, in case of the contractor's death, his executors or administrators would succeed to the rights and liabilities of the deceased contractor. When such is the case, the contract is assignable by the act of the party. We conclude, therefore, that the contention of the attorney general as to the legality of the assignment cannot be sustained. It is further contended that it does not affirmatively appear from the complaint that the printing of the reports designated in the complaint was not in fact done by the Free Press Company, with which the contract was made; that the allegation that the officers caused the printing to be done by other parties is not sufficient. But we think this contention is untenable, and that the allegation in this respect is sufficient. If, however, there should be any doubt as to the correctness of the foregoing conclusion that the contract in controversy in this case was assignable without the consent of the state, or that it could only be assigned with the consent of the state, we think that consent is fairly to be inferred from the alegations of the complaint. It is alleged "that the plaintiff has furnished material for and done all the printing for the defendant which was specified to be done in said contract, except" the three reports designated. It may reasonably be inferred, therefore, that bills for this printing were presented to and allowed by the state. If the commissioner had knowledge of this assignment, and made no objection to the same, but permitted the plaintiff to carry out the terms of the contract made with the Free Prees Company without objection, and draw from the state the money accruing for such printing, we think the state must be held to have assented to the assignment, and cannot now be heard to question the legality of the same. That such commissioner of public printing had such knowledge we think must be presumed from the allegations of the complaint. Therefore, taking either view, the demurrer to the first cause of action must be overruled, and it is so ordered.

The demurrer to the second cause of action presents the further question as to whether or not the complaint shows affirm-

atively that Yates was not given all the work required to be given him by the proper officials. The only allegation upon this subject is "that there was a large amount of printing to be done for said officials, which said Yates was entitled to do under his contract, and was ready and anxious to do the same, to wit, printing, as specified in his contract, from the governor's office, to the amount of $150." Then follow a number of other offices, with the amounts, aggregating $4,650, as before stated. There is no allegation that this printing was done by other parties, or was in fact required by any authorized officer. What is intended, therefore, by the allegation "that there was a large amount of printing to be done for said officials," it is difficult to determine. It will be noticed that it is not stated that the commissioner of public printing, nor any authorized agent of the state, required this work to be done, or that it was in fact done. This court said, in Carter v. Thorson (S. D.) 59 N. W. 470: "The legal effect of making such a contract is hardly more than to designate a public printer of the different classes of work named. It confers upon the contractor the right to do all the work, at the prices designated, which the state requires, of the kind designated in his contract; and upon the state the right to have so done such work as it may require. It thus fixes the relations of the parties, and their respective rights and duties." The law (Chapter 99, Laws 1891) providing for the classification and government of state printing provides, in Sec. 1, that the state printing shall be divided into five classes. Sec. 2 limits the maximum compensation to be paid. Sec. 3 reads as follows: "The secretary of state shall be *ex officio* commissioner of public printing, and he shall have general supervision of all state printing, measuring the work and adjusting all accounts with contractors, in compliance with law and regulations adopted by him." And Sec. 4 provides the manner of letting contracts. But nowhere is it provided that the commissioner shall stipulate for any amount of printing to be done. It was, doubtless, the intention of the legislature that all printing that

the state might require to be done in the class contracted for should be done under the contract. The requirement of the state is the measure of the amount of work to be done. The simple allegation "that there was a large amount of printing to be done for said officials" is not an allegation that the state required it to be done. We think, as to the second cause of action, the complaint is defective in not showing that the printing which the plaintiff claimed he was entitled to do under his contract was printing which the state required to be done. As to the said second cause of action, the demurrer is sustained.