LEADER PRINTING CO. v. ROBERT LOWRY *et al.*

(Filed Nov. 7, 1899.)

1. PRINTING—*Assignment of Contract.* A contract entered into by the governor of Oklahoma with a private partnership, under the provisions of section 1, art. 1, ch. 29, Sess. Laws Oklahoma, 1897, is an assignable, contract, and a corporation to whom such contract has been assigned may maintain an action to compel, by *mandamus*, the officers of one of the territorial colleges to furnish it with the copy for the printing for such college. Such a contract does not involve such an element of confidence or trust as will render it non-assignable.

2. SAME—*Bond—Sureties—Liability of.* The sureties on a bond given as required by section 2, art. 1, ch. 29,—the act referred to above,—for the faithful performance of the contract provided for in section 1 of said act, are not discharged by an assignment of the contract. They remain liable for the performance of the contract after its assignment the same as before.

3. PLEADING—*Corporate Existence Presumed—Demurrer—Plea in Abatement.* It is not necessary for a plaintiff corporation, in bringing a suit, to allege that it is a corporation. Its legal capacity to sue will be presumed in law until the contrary is made to appear; and, unless it affirmatively appears from the face of the petition that the plaintiff has no legal capacity to sue, such question cannot be raised by a demurrer. The point that plaintiff is not a corporation should be raised by a special plea in the nature of a plea in abatement. If it is not so raised before pleading to the merits, the question is waived. By pleading to the merits, a defendant admits plaintiff's capacity to maintain the action.

(Syllabus by the Court.)

*Error from the District Court of Payne County; before Jno. H. Burford, District Judge.*

*Dale & Bierer,* for plaintiff in error.

*Harper S. Cunningham, Attorney General,* and *Fred M. Elkin,* for defendants in error.

Action by the Leader Printing company against Robert A. Lowry, and others. Judgment for defendants, and plaintiff brings error. Reversed.

Opinion of the court by

BURWELL, J.: On April 3, 1897, the governor of Oklahoma entered into a written contract with Roy V. Hoffman and William Blincoe, partners doing business under the firm name and style of Hoffman & Blincoe, under the provisions of article 1, ch. 29, Sess. Laws Oklahoma, 1897, for the territorial printing for the period of two years from said date. The section referred to is as follows:

"Section 1. The governor of the Territory is hereby authorized and directed to enter into a contract, in the name of the Territory, with some responsible person, partnership or private corporation, to do all printing, binding, stereotyping, and to furnish all stationery of whatever character which is paid for out of the territorial treasury, the treasury of the board of regents of any of the territorial instutions, or from the territorial school land fund, for a period of two years from and after the 15th day of March, A. D. 1897; and every territorial officer having work of this nature to be done, or stationery to be purchased during the life of said contract, shall furnish the copy to, and have the same done by the party named in said contract. Any warrant drawn by the auditor to any other person or corporation for printing or stationery than the person named in said contract, or his assigns, during the two years above specified, shall be absolutely void."

At the time of the execution of this contract Hoffman & Blincoe executed and delivered to the Territory a bond as required by section 2, ch. 29, (Sess. Laws 1897,) which section reads:

"The person, partnership or corporation that may be contracted with, as provided in section 1 of this act, shall execute to the Territory of Oklahoma a good and sufficient bond, with at least three satisfactory sureties, in the sum of five thousand dollars, conditioned for the faithful and prompt performance of his contract. Said bond shall be approved by the governor and filed with the auditor of the Territory."

The bond executed by Hoffman & Blincoe was duly approved by the governor, and filed with the proper officer, and they were given the territorial printing. Some time later they assigned this contract to the Leader Printing company, and the printing was given to it for a considerable time, but finally defendants refused to furnish copies to plaintiff to do the printing for the Agricultural and Mechanical college of Oklahoma. The Leader Printing company, plaintiff herein, then brought this suit, praying that defendants be enjoined from giving the printing for the college to any one other than the plaintiff, and also praying that they be compelled, by *mandamus*, to deliver the copy for printing for the college to plaintiff. An alternative writ of *mandamus* and restraining order were issued by the district judge. The attorney general of Oklahoma and Mr. Fred M. Elkin, on behalf of the defendants, filed a motion to quash the alternative writ. On the hearing of this motion the district court quashed the alternative writ of *mandamus*, and set aside the restraining order; from which ruling the plaintiff appeals to this court, praying a reversal of the judgment of the court below.

The questions presented in this case have never been before this court. Therefore we have searched the authorities with care in the hope that we might find them

definitely settled by other courts. But, notwithstanding there are many cases which bear upon the first two questions considered, we have only found one or two which decide the particular questions involved herein. These we will refer to later in this opinion.

It is contended by the defendants that the contract entered into between the governor and Hoffman & Blincoe was a personal contract, and could not be by them assigned to the Leader Printing company, except with the knowledge, consent, and approval of the governor; and that plaintiff has no cause of action against the defendants,—citing many authorities in support of their contention. These authorities, however, only go to the extent of holding that contracts conferring rights coupled with liabilities, or which are founded upon relations of personal confidence and trust, or contemplate a moral or mental worth, or peculiar skill or ability of the party contracted with, can be assigned only by agreement of all parties thereto. We entertain no doubt that a contract which involves these elements—that is, where they are the controlling elements of the contract—cannot be assigned without the consent of all of the parties; but when this is given, and the bond for its faithful performance surrendered,—except, possibly, under some peculiar circumstances,—it really amounts to a new contract. Still, as to whether the consent by all of the parties to the assignment of a contract amounts to a new contract, to a very great extent depends upon the circumstances of each case. The defendants contend that the statute under which the governor made the contract vests a discretion in him; that it directs him to contract with some "responsible" person; that he alone, under

the statute, can select this person; and that the contract
is founded upon relations of confidence and trust.

This contention is not sustained by the authorities.    It
cannot, from the contract, or circumstances surrounding
the same, be said that the governor expected Hoffman &
Blincoe to personally set the type and do the printing.
There is nothing in the statutes or the language of the
contract which excludes the idea of this work being per-
formed by others, and, if there is not, and the parties can
do the work by agents, then they can assign the contract
as a whole to any one else.

The case of *Devlin v. Mayor, etc.*, 63 N. Y. 8, is in point
and strongly supports this view.    The court in that case
had before it the question of the assignability of a con-
tract made by the city of New York for cleaning streets.
In discussing this case the court said:

"The circumstance that by the statute in this case the
contract was to be awarded as the common council should
deem for the best interests of the city does not distinguish
this case from those referred to.    This provision did not
refer to the person of the contractor, but to the terms of
the contract.    It was not intended to enable the common
council to be a respecter of persons, and to give the con-
tract to favorites, but to give them a discretion to choose
between different proposals, relieving the authorities
from the necessity of awarding the contract to the lowest
bidder, irrespective of the terms of the contract, the se-
curity offered, or the fairness or sufficiency of the com-
pensation to insure performance with reasonable cer-
tainty.    This statutory provision does not change the
character of the work, or import into the contract any
unusual terms, or destroy its assignability.    *    *    The
assignability of a contract must depend upon the nature
of the contract and the character of the obligations as-

sumed, rather than the supposed intent of the parties, except as that intent is expressed in the agreement.   Parties may, in terms, prohibit the assignment of any contract and declare that neither personal represntatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations.   But, when this has not been declared expressly or by implication, contracts other than such as are personal in their character—as promises to marry, or engagements for personal services requiring skill, science, or peculiar qualifications—may be assigned, and by them the personal representatives will be bound.   *   *   When the contract is executory in its nature, and an assignee or personal representative can fairly or sufficiently execute all that the original contractor could have done, the assignee or representative may do so, and have the benefit of the contract."

In *Carter v. State*, 8 S. D. 153, 65 N. W. 422, the precise question presented here was determined.   The secretary of state, on behalf of the state, had made a contract with a company for the state printing.   This company assigned the contract, and the secretary refused the assignee the printing, whereupon he brought an action for damages growing out of such refusal.   The attorney general, on behalf of the state, demurred to the complaint on the ground that the contract was not assignable, and insisted that the right of the Free Press company, under its contract to do the state printing, could not be assigned to Arthur L. Carter, the plaintiff therein; that the right was a personal one, belonging alone to the Free Press company; that the proposal and specifications came from the Free Press company, and were accepted, and a personal contract entered into between the state and the Free Press company; that the Free Press company

gave a bond for the faithful performance of the contract. The court said:

"This contention is, in our opinion, untenable. There is no stipulation in the contract prohibiting the Free. Press company from assigning the same, and we discover nothing in the nature of the contract, or in public policy, that would prevent such an assignment so long as the state retained the obligation of the original contractor and its sureties for its faithful performance of the contract  *  *  There is, in our opinion, no element of personal contract, in the sense in which that term is ordinarily used, in the contract in controversy.  *  *  The contract is not for the personal services of the contractor, and he may do the work through agents or assignees. Whether such agent acts under a naked power or a power coupled with an interest cannot affect the character or vary the effect of the delegation of power by the original contractor.  Had the contract in this case been made with an individual instead of a corporation, there could be no doubt that, in case of the contractor's death, his executors or administrators would succeed to the rights and liabilities of the deceased contractor.  When such is the case, the contract is assignable by the acts of the parties.  We conclude, therefore, that the contention of the attorney general as to the legality of the assignment cannot be sustained."

To the same effect is *Mirror Co. v. Galvin*, 55 Mo. App. 412.  In this case a publishing firm entered into a contract to publish a book for certain parties, and prior to its completion the publishing firm incorporated.  The corporation then brought suit on the contract.  One of the defenses to the suit was that the contract could not be assigned, by the original parties to the contract, to a corporation.  The court said·

"The authorities cited in support of the third proposition show merely that when the obligations of a contract rest upon a personal confidence reposed in one of the contracting parties, he cannot delegate the performance to a stranger without the assent of the other contracting party. As we have shown, the contract of Mather and Blood was one in which no particular confidence was reposed in Fanning and Galvin as individuals."

From the authorities and reason we think a contract for printing supplies for a state, unless expressly made so by the terms of the contract or by statute, is not a contract which involves personal trust or confidence to such an extent that it cannot be assigned. The statute requires the governor to contract with some "responsible" person, but this only means that the governor shall contract with some person who is able to do the printing and discharge the obligations required of him. It is true that the word "responsible" includes, to some extent, "trust," but the element of trust embraced in the word "responsible" as used in the statute would be a confident opinion or expectation that the person to whom the printing or contract is let will faithfully carry out its provisions; in other words, the contract should be let to some trustworthy person. The element of trust embraced in the word "responsible" is not that trust which alone induces contracts and by reason thereof takes them out of general rule of assignment, because the governor is required to take a bond for the faithful performance thereof. A bond, however, might be taken for the faithful performance of a contract which is not assignable; but, in our opinion, the legislature did not intend that the governor should enter into a non-assignable contract. The legislature evidently believed that by giving

a contract to some "responsible" person, partnership, or private corporation for all of the printing, etc., for the Territory, it could get much better rates than could be obtained by each officer purchasing his own stationery and supplies from different persons. The law imposes upon the governor the duty of selecting the person, and in making this selection he is given the widest latitude. He does not have to let the printing to the lowest bidder, nor to a person in whom he has some peculiar confidence or trust. The legislature presumed, as it had a right to, that the governor would faithfully discharge his duty, and do the best he could for the Territory; and, to guaranty to the one to whom the printing might be let all of the printing for the Territory, they said that "any warrant drawn by the auditor to any other person or corporation for printing or stationery than the person named in said contract, or his assigns, shall be absolutely void." From the language just quoted it will be seen that the contract may be assigned.

The defendants in error contend that the words "or his assigns" refer to the chose in action, or the money due or to become due for the printing, and do not mean that the contract may be assigned. This contention is untenable. It will not be presumed that the legislature made use of meaningless or unnecessary words, but, rather, that by the exception it saved something which otherwise might possibly be included in the general language of the law. The right to assign a debt which is due and fully earned is unquestioned by all the courts of this country, and, even if the language "or his assigns" were not in the act, we entertain no doubt but what the party to whom the contract was let could assign any

money due him under the same. We believe that this law in effect provides that any warrant drawn by the auditor for printing done or stationery, etc., furnished, not under the contract, shall be absolutely void; that it provides that no warrant shall be drawn in favor of any person except the person with whom the contract was made, or the person to whom it might be assigned—the object being to compel all printing to be done and all stationery to be furnished under the contract. But there is nothing to prevent the one to whom the contract is given from assigning the same to a third party. A man has the right, in the first instance, to contract only with those with whom he desires to do business; yet, once he enters into a contract and rights have accrued to the other party, those rights cannot be defeated, even by death or misfortune, unless it was intended by the parties that the contract should be executed personally and not by agents, sub-contractors, or assignees. We think the contract in this case was such as could be assigned.

The defendants also contend that when the contract was assigned the bond executed on behalf of Hoffman & Blincoe to the Territory was forfeited, and the bondsmen discharged from their obligation; that the bondsmen for Hoffman & Blincoe did not agree that some one else would "faithfully" perform the contract; that they bound themselves for Hoffman & Blincoe alone; and that the bondsmen could not be bound without their consent. We cannot agree with this view of the case. These bondsmen bound themselves to the Territory for the faithful performance of this contract, and if Hoffman & Blincoe were to fail to carry out the terms of the same, either in person or by agents or assignees, then they

would be liable. After the assignment of the contract to the plaintiff, if the Territory and plaintiff desired, a new bond could have been executed for the faithful performance of the contract by the plaintiff, and the old bond surrendered; but this would have constituted a new contract. That, however, was not done, and it was not necessary that it should be done. The Territory had a right to hold the original bond, and so long as it is retained by the Territory those who executed it are liable for the fulfilment of the contract, regardless of how many times it may be assigned. It is presumed in law that the bondsmen knew at the time they executed the bond that the contract could be assigned and that they would be bound for the performance of the conditions thereof, or for damages sustained by reason of its non-performance. It is true that one to whom a contract has been assigned is the real party in interest, yet he becomes the real party in interest by virtue of the assignment, and the other party to the contract is not usually consulted regarding such assignment. Therefore he has nothing to do with it. The one thing that interests him is having the conditions of the contract properly performed, and where a contract is assignable it is immaterial to him who does the work under the same. The Leader Printing company, by having the contract assigned to it, took the place of Hoffman & Blincoe, and the liability of the bondsmen for Hoffman & Blincoe continued the same as though the contract had not been assigned. The Territory, after the assignment, the same as before, upon default, would look to Hoffman & Blincoe and their bondsmen. The Leader Printing company, so far as the Territory is concerned, is no more

than the representative of Hoffman & Blincoe. It has a right, as the assignee of Hoffman & Blincoe, to insist upon having the work, but the Territory could not compel it to perform the contract. If the Leader Printing company fails to properly comply with the conditions of the contract, it and Hoffman & Blincoe would have to adjudicate that matter between themselves. The Territory could compel Hoffman & Blincoe to properly perform the work, and, if they or their assigns fail as to any requirement, and if damages are sustained by the Territory, the bondsmen of Hoffman & Blincoe are liable for the payment of the same, and they remain liable so long as there is no change in the conditions of the contract. An assignment of the contract will not relieve them. The contract remains the contract of Hoffman & Blincoe until its conditions are fulfilled, or they are relieved by some act on behalf of the Territory. The contention that the contract was forfeited by the assignment thereof on account of the discharge of the bondsmen thereby is untenable.

The next and last point made by the defendants in error is that the alternative writ fails to state that the plaintiff is a corporation, duly incorporated and authorized to do business in the Territory of Oklahoma; and in arguing this point in their briefs they say: "So far as this court is informed, the relator may be a partnership under a fictitious name. If this be the fact, when challenged, as here, it has no standing in court." If the plaintiff in this action were a partnership, its failure to file and publish a certificate of co-partnership, as required by the statutes of Oklahoma, could not, in our opinion, be raised by a demurrer or by a motion, which is, in effect, a de-

murrer, as in this case. The supreme court of California, under a similar statute, passed upon the question as to whether a partnership, in bringing a suit, should allege in its petition that its members had complied with the requirements of the statute with reference to filing and publishing a certificate of co-partnership, and held that it did not; that a demurrer to a petition on the ground that no such allegation is contained therein should be overruled, and that the issue as to whether it had complied with the law should be raised by a pleading in the nature of a plea in abatement; but it further held that where a partnership alleges compliance with the law in these respects the burden is upon such partnership to prove it. These questions, however, are not in this case, except in so far as it may be necessary to consider them in connection with the question of the effect of the failure of the alternative writ to state that the plaintiff is a corporation, duly organized and incorporated under the laws of Oklahoma. The petition in this case alleges that the plaintiff is a corporation, but such an allegation or recitation nowhere appears in the alternative writ. It it true that in the title of the case appears the following: "The Leader Printing company, a Corporation, Plaintiff." If it is necessary to allege the corporate existence of the plaintiff, the above language in the title of the case would not be sufficient, as the words "a corporation" would be descriptive of the plaintiff. (*Miller v. Mining Co.*, [Idaho] 31 Pac. 803; *Keokuk Falls Imp. Co. v. Kingsland & Douglas Mfg. Co.*, 5 Okla. 33, 47 Pac. 484; *White v. Mullins*, [Idaho] 31 Pac. 801; and other authorities not cited. *Contra, Saunders v. Seed Co.*, [Utah] 24 Pac. 532.)

And it is a well-settled rule that after the writ is issued it must stand alone, and any defect therein must be corrected by amendment of the writ, and is not cured by a proper allegation in the petition. Under our practice the alternative writ and the defendant's answer constitute the pleadings. If the writ is defective, it may be amended the same as any other pleading. Therefore, if such an allegation is necessary, it should be in the alternative writ as well as in the petition. But is such recital necessary, and, if necessary, how must the defendant in an action present the question so as to enable the court to pass upon the same? It would take considerable research to determine on which side of this question is the weight of authority, and even the courts that hold it to be necessary to allege corporate existence are divided as to what is the proper pleading to raise this point. There are so many able courts on each side of the proposition that we feel it to be our duty not to search for the weight of authority, but to determine, if possible, with which is the better reasoning. A corporation secures its power to sue and be sued from the statute. The statute provides in express terms how a corporation may be created, and then it gives them power to sue and be sued. The right of a corporation to sue and be sued does not depend upon an allegation of its corporate existence in a petition, but upon the fact that it is incorporated. Some of the courts make the distinction that if the name is such as to import corporate existence, it is not necessary to allege it, but if the name does not import corporate existence, it must be alleged. We fail to see any merit in this position. An examination of the cases which it is claimed establish this rule will show that

many of the names which it is held import corporate existence might have been joint-stock companies or partnerships, and in most of these cases there was nothing in the name to indicate that it was a corporation. The word "Company" or "Co." no longer applies exclusively to corporations; it may now be a part of the name of a partnership or if an unincorporated company. Therefore the necessity for alleging, or the legal excuse for not alleging, corporate existence, in our opinion, does not depend upon the name of the plaintiff. A natural person does not have to allege in his petition that he is legally qualified to maintain a suit. Then why should the petition of a corporation contain such an allegation? When an individual brings a suit it is presumed, unless there is something in the petition which shows the contrary, that he is legally qualified to maintain it; and the same is true of a corporation, without regard to its corporate name. We think the correct rule is that, when a suit is commenced under a fictitious name, no matter what that name may be, it will be presumed in law that the plaintiff is legally qualified to maintain it, until the contrary is made to appear; and, unless the petition shows upon its face that a plaintiff has no legal capacity to sue, the objection must be raised by a special plea in the nature of a plea in abatement. It cannot, except where the objection affirmatively appears upon the petition, be raised by a demurrer. We agree with counsel for appellees that, if the plaintiff were a partnership, the suit could not be maintained; but that is because we have no statute, so far as we have observed, authorizing a partnership to sue in a firm name. Such a suit must be brought by the members of the firm.     Many

states have changed the common-law rule, and authorized suits to be maintained in the name of a partnership, regardless of whether the name is a fictitious one. Under such a statute, how could it be said that the word "company" imports corporate existence? It cannot, because the word "company" is almost as frequently found in a partnership name as in a corporate name.

It may be that the states which have held that certain names import corporate existence have no statute authorizing any persons or company except a corporation to sue or be sued under a fictitious name; but we have failed to find where any of these courts have given that as a reason for holding that certain fictitious names import corporate existence. The rule does not seem to have been founded on any local statute or statutes, but upon the particular wording of the name. We believe that the rule that certain names import corporate existence is not sound, and are, therefore, unable to agree with the same. This view is supported by able authorities.

In the case of *Iron Co. v. Rutherford*, 18 N. J. Law 105, Nevius, J., said: "The plaintiffs, by the name of the 'Bennington Iron Company,' declare against the defendant, and it is insisted that this does not sufficiently designate their character, or show their right to maintain this suit. That is not the name of an individual, nor is it a name necessarily importing an incorporated company, nor are they anywhere described as a corporation, but that the name indicates that they are a private company, association, or partnership, and, as such, cannot maintain a suit, except in their individual names.

If in truth the plaintiffs are an incorporated company, either domestic or foreign, their right to bring suit in our courts is not denied. * * If we admit the principle, which is true by the numerous authorities cited in the argument, that a foreign corporation may maintain an action in our courts, and that it is not necessary that their charter should be set forth in their declaration, it remains to inquire whether they are by law required to aver that they are a legally incorporated company."

After further statements, the court said: "Nor can I find any such distinction as is drawn by the counsel for the defendant between corporations whose name denotes their corporate character, and where it does not, nor do I think such distinction is founded either in the law or reasoning of the same. A party must come into court in his true and proper name. If he fails to do so, the defendant may interpose his plea in abatement. But, if he pleads to the action, he admits the plaintiff's right to sue in the name assumed. In the present case the name of the plaintiffs is distinctly stated, and the law will presume it to be truly stated till the contrary appears, and cannot, without a tax upon common sense, infer it to be the name of an individual or natural person; nor will it presume it to be the name of an unincorporated company or partnership, who can sue only in their individual names, but of an incorporated company, who have a right to sue in their incorporated name. A rational construction is to be given to a pleading where it is susceptible of it, and we are not to resort to any other when it is equally natural and more consistent with the intent and object which the

party has in view. I reject, therefore, the idea that the plaintiffs are suing as a private association or partnership, because the name assumed no more imports such an association than it does an incorporation, and because the latter is most consistent with reason and the intent of the parties."

The United States courts seem to be in harmony with the rule that it is not necessary to allege corporate existence. In *Cement Co. v. Noble,* (C. C.) 15 Fed. 502, the court said:    "In an action brought by a corporation it is not necessary to allege that it is a corporation. It is sufficient if the name be stated at the commencement of the narration, since the plaintiff need only prove the material allegations of his declaration.    *Non constat,* why there should be required proof of the existence of plaintiff corporation, not averred and not challenged by the defendant.    In federal courts the existence of foreign and domestic corporations alike can be denied only by a special plea in abatement or bar or notice. The pleading of the general issue in an action of assumpsit by a foreign corporation admits the corporate existence, and evidence should be received to establish the cause of action without proof, but not to show want of corporate capacity to sue."

To the same effect is *Society for the Propagation of the Gospel v. Town of Pawlet,* 4 Pet. 500, 7 L. Ed. 927.

Cole, J., speaking for the supreme court of Wisconsin, in the case of *Bank v. Knowlton,* 12 Wis. 624, said:    "The complaint in a suit brought in a corporate name need not aver the plaintiff to be a corporation."    This rule

was followed in *Rains v. City of Oshkosh,* 14 Wis. 374; *Lodge v. McDonald,* 16 Wis. 112; *Trust Co. v. Fisher,* 17 Wis. 114; *Insurance Co. v. Cross,* 18 Wis. 109.

In *Ryan v. Bank,* 5 Kan. 658, the court said: "It is not necessary at the common law to aver the corporate capacity of a corporation to sue, nor to show that a corporation plaintiff is such by averment," — citing authorities; and in the syllabus it is stated that "in an action by the Farmers' Bank of Missouri an allegation in the petition that the plaintiff is a corporation is not necessary." This same rule has been followed by Illinois, Kentucky, Nevada, New York, North Carolina, Pennsylvania, Vermont, Virginia, and West Virginia.

From a careful examination of the authorities upon this question, we believe that the better reasoning is with the authorities holding that it is not necessary, in a petition, to allege corporate existence. Section 938 of the Statutes of Oklahoma provides: " In all civil actions brought by or against a corporation, it shall not be necessary to prove on the trial of the cause the existence of such corporation, unless the defendant shall in his answer expressly aver that the plaintiff or defendant is not a corporation." It might be contended that this section of our statute only relieves the plaintiff from proving the existence of such corporation, but does not excuse the plaintiff from alleging that the plaintiff or defendant is a corporation. This very question was before the supreme court of Wisconsin in the case of *Bank v. Knowlton, supra,* and the court there held, under a similar statute, that it was not necessary to allege cor-

Leader Printing Co. v. Lowry *et al.*

porate existence, and that plaintiff, by such a statute, was relieved of alleging, as well as proving, the corporate existence of plaintiff or defendant.

Section 3986, Statutes of Oklahoma, 1893, provides: "In all actions, allegations of the execution of written instruments and endorsements thereon, of the existence of a corporation or partnership, or of any appointment or authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney." This section of our statute, standing alone, would seem to indicate that it is necessary to allege corporate existence in a petition; but when this section is considered in connection with section 938, it cannot be given such a construction. Construing these two sections together, under the authorities above cited, we believe the following to be the rule: If a corporation brings a suit, it is not necessary that it allege its corporate existence in the petition, and that, under section 938, it is not required to prove its corporate existence unless the same is expressly denied in the defendant's answer; but, under section 3986, if the plaintiff alleges in its petition that it is a corporation duly incorporated, etc., that such allegation shall be taken as true, unless the denial of the same be verified by the affidavit of the defendant, his agent or attorney.

For the reasons herein stated, the judgment of the lower court should be reversed, vacated, and set aside, and the cause remanded to the lower court, with the

direction for it to proceed in conformity with. the views herein expressed. It is so ordered.

Burford, C. J., having presided in the court below, not sitting; all of the other Justices concurring.