MELLGREN PLUMBING SHOP, Inc., Respondent v.
LEWIS AND TINSLEY, Inc., Appellant

(90 N.W.2d 78)

(File No. 9658. Opinion filed May 10, 1958)

194

**Bangs, McCullen, & Butler,** Rapid City, for Defendant and Appellant.

**Roswell Bottum, Burnell H. Hendricksen,** Rapid City, for Plaintiff and Respondent.

SMITH, J. As an assignee, the plaintiff, by its complaint prays judgment for $14,430.13 alleged to be due from defendant as the final payment under a contract to furnish and install plumbing and heating equipment. The answer asserts (1) the contract for the described installation is illegal because made and performed by persons then engaged in

business under a fictitious name contrary to SDC 49.08, and (2) the assignment to plaintiff is invalid because prohibited by the construction contract. The trial was to the court and resulted in a judgment for plaintiff as prayed. Defendant has appealed.

In 1950 L. F. Olsen and Peter Mellgren, copartners, were engaged in the plumbing and heating business under the name of Mellgren Plumbing Shop. On April 13, 1950, under that name, they entered into a contract with defendant to furnish the labor and material for a building under construction at Rapid City. Article 33 of the "General Conditions" included in the contract reads as follows: "Neither party to the contract shall assign the contract or sublet it as a whole without the written consent of the other, nor shall the contractor assign any moneys due or to become due to him hereunder, without the previous written consent of the owner." The architect's certificate authorizing final payment of $14,430.13 was delivered to the contractor and by it to the owner in November 1951.

In April 1954 the plaintiff corporation, "Mellgren Plumbing Shop, Inc.," was organized by the copartners, and one Donald A. L'Esperance, their accountant, and the business and assets of the copartnership were transferred to the plaintiff corporation. The copartners each received 1,249 shares of the capital stock and Donald A. L'Esperance received 2 shares of such stock. Since that time the plumbing and heating business has been carried on by the corporation.

While operating under the fictitious name Mellgren Plumbing Shop the copartners failed to file the statement required by SDC 49.08. Such a statement was filed in the office of the clerk of courts of Pennington County by the copartners on Feb. 2, 1955. Thereafter on Feb. 8, 1955 this action was commenced.

After the foregoing facts had been established the plaintiff rested. Thereupon the defendant moved for findings and judgment for the reason, first, the original contract was not assignable, and second, it was illegal at its inception and created no rights in the assignors or the assignee. The motion

196

was overruled and thereafter, defendant having stood on its motion, findings and judgment were entered for plaintiff.

The first proposition presented by defendant is that the assignment to the corporate plaintiff, without the consent of the defendant, of the claim of the copartnership for the final payment is invalid because prohibited by the contract.

For the purpose of this decision, we assume, as contended by the defendant, that the parties by the provision of their contract reading "* * * nor shall the contractor assign any moneys due or to become due to him hereunder, without the previous written consent of the owner" intended to prohibit the assignment of a claim for money due under the contract.

■ On principle and by the weight of authority a provision clearly prohibiting such an assignment is valid and enforceable. The cases are collected in the annotation following Allhusen v. Caristo Construction Corp., 303 N.Y. 446, 103 N.E.2d 891, 37 A.L.R.2d 1245, at page 1251. Cf. Carter v. State, 8 S.D. 153, 65 N.W. 422; Public Opinion Pub. Co. v. Ransom, 34 S.D. 381, 148 N.W. 838, Ann.Cas.1917A, 1010; 2 Williston, Contracts, Rev.Ed., § 422, p. 1213; and 4 Corbin, Contracts, § 873, p. 487.

In Allhusen v. Caristo Construction Corp., supra, it is written [303 N.Y. 446, 103 N.E.2d 893]: "In the light of the foregoing, we think it is reasonably clear that, while the courts have striven to uphold freedom of assignability, they have not failed to recognize the concept of freedom to contract. In large measure they agree that, where appropriate language is used, assignments of money due under contracts may be prohibited. When 'clear language' is used, and the 'plainest words * * * have been chosen', parties may 'limit the freedom of alienation of rights and prohibit the assignment.' State Bank v. Central Mercantile Bank, supra, 248 N.Y. [428] at page 435, 162 N.E. [475] at page 477, 59 A.L.R. 1473."

■ The ultimate question for decision is, does it follow, as a matter of sound construction, that because the parties intended by this provision to prohibit the assignment of a claim for money due under the contract that they intended thereby to prohibit an assignment to this particular

corporation which was organized to take over the business of the copartnership, and which is owned, controlled and managed by the individual copartner contractors.

The words we are considering are contained in a printed form which the architect of the owner made use of in preparing a contract for execution by the parties. Separately considered, they convey a single sweeping meaning. However, to arrive at a reasonable and sound construction of the contract of the parties, it is our opinion we must read this provision in the light of the purpose for which it was so obviously employed. 12 Am.Jur., Contracts, §§ 242 and 250.

In 3 Corbin, Contracts, § 545, p. 90, it is written: "When it becomes clear that the parties intended to produce a certain factual result, interpretation should be affected by reasonable and necessary implications, so that the legal effect then given to the instrument will be such as to attain the intended factual result. A court may thus be able to realize the aims and purposes of the parties, even though their express words would otherwise be interpreted differently and would produce a different legal effect. This may be done without the necessity of any formal decree of reformation."

To assure the active and sustained interest of the contracting parties until their contract was fully performed, and to protect against any character of intervention by third parties was the obvious factual and legal result the parties sought to achieve through this contractual provision. Hence they provided against the assignment of both duties and rights although the change in form from a copartnership to a corporation has operated to inject a third legal entity, it has not defeated the real purpose the parties had in view. The obligation of the copartners remained unchanged. 6 C.J.S. Assignments § 112, p. 1164. The corporate plaintiff is and has at all times been owned, controlled and managed by the individual copartners. The assignment has neither interrupted their services to the defendant nor has it had any tendency to diminish their personal interest in giving the defendant complete satisfaction. The project has been completed and the architect has certified the final payment to be due. To adopt the construction for which the defend-

ant contends, would be to permit it to use that which was intended as a shield for its proper protection as a technical and unfair weapon with which to frustrate or defeat the contractors from gaining the agreed consideration they have been promised. Such a construction would square neither with the manifest intention of the parties nor justice. Therefore we hold the contention untenable.

In Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335, 182 P.2d 182, 188, the California court considered a case in which a corporation was party to a nonassignable contract, and upon voluntary dissolution its right was assigned to its sole stockholders who carried on as a copartnership. In upholding the validity of the assignment to the copartnership the majority of the court said, "* * * if an assignment results merely from a change in the legal form of ownership of a business, its validity depends upon whether it affects the interests of the parties protected by the nonassignability of the contract. Model Baking Co. v. Dittman, Tex.Civ.App., 266 S.W. 802, 803; Walker v. Mason, 272 Pa. 315, 116 A. 305; Bradford & Carson v. Montgomery Furniture Co., 115 Tenn. 610, 617, 92 S.W. 1104, 9 L.R.A.,N.S., 979; Fisher v. Berg, 158 Wash. 176, 179, 290 P. 984; Gulf States Creosoting v. Loving, 4 Cir., 120 F.2d 195, 199; see 6 C.J.S. Assignments, § 26, p. 1075." Further the court wrote, "If the dissolved corporation had brought an action for the delivery of the goods, the real parties in interest would have been its shareholders, and the purchase price would have been payable by the shareholders out of the assets of the corporation distributed to them or out of their other property. To require an action to be brought under such circumstances by the dissolved corporation rather than by the copartnership formed by its shareholders, which owns all the assets of the corporation and carries on its business, is to require compliance with a shallow formality that serves no substantial interest of the seller." And cf: Thompson v. Commissioner of Internal Revenue, 3 Cir., 205 F.2d 73.

Was the contract illegal and void because made by the copartners while doing business under the name of "Mellgren Plumbing Shop" before they filed the statement required

by SDC 49.08? The foundation of defendant's contention that the contract was illegal and therefore void must be set forth.

Prior to 1933 our statutes required every partnership transacting business under a fictitious name to file and publish a certificate showing the name and residence of every partner. The right to maintain an action in court on contracts was denied to such a partnership which failed so to do. §§ 1334 to 1339, Rev.Code 1919. The wording of a portion of § 1336, Rev.Code 1919 is involved in this contention of appellant. It reads in part:

"Persons doing business as partners, contrary to the provisions of this article, shall not maintain any action on or on account of any contracts made or transactions had in their partnership name in any court of this state, until they have first filed the certificate and made the publication herein required; **provided, however, that if such partners shall at any time comply with the provisions of this article, then such partnership shall have the right to maintain an action on all partnership contracts and transactions entered into before as well as after compliance with this article.**" (Emphasis supplied.)

In Heegaard v. Dakota Loan & Trust Co., 3 S.D. 569, 575, 54 N.W. 656, at page 658, this court wrote as follows: "Without further citation of authorities, we can say the only penalty attached by the Code for a failure to comply with this statute is a legal incapacity to maintain an action upon 'any contract or transaction' had in the partnership named. There is no disability to make contracts or to have transactions. The objection is to the legal capacity to sue. The proviso attached to our statute removes this incapacity as soon as the firm at any time has complied with its terms, and this compliance relates back to cover any contract or transaction entered into prior or subsequent to the compliance."

By Ch. 155, Laws 1933, the cited statutes were repealed and in their place there were enacted the statutes which have been carried forward as SDC 49.08.

By SDC 49.0801 it is provided:

"It shall be **unlawful** for any person or co-partnership to engage in or conduct a business for profit in this state under any name which does not plainly show the true surname of each person interested in such business unless they shall first file a statement * * *" etc. (Emphasis supplied.)

By SDC 49.0802 it is provided:

"No person or firm engaged in conducting or operating or interested in a business in this state contrary to the provisions of section 49.0801 shall maintain any action at law or otherwise in the name under which the business is conducted nor on their own account to recover anything or enforce any right claimed to be due or arising out of the operation of said business until the statement required by section 49.0801 has been filed."

By SDC 49.9901 it is provided: "Any person violating the provisions of chapter 49.08 shall, upon conviction, be punished * * *" by fine or imprisonment or by both fine and imprisonment.

In American Legion Holding Corp. v. Hurowitz, 72 S.D. 89, 30 N.W.2d 9, 11, wherein it was asserted that the tenant had violated a provision of the lease by operating an unlawful business in the demised premises this court wrote, "Under the admitted facts of this record, we think it clear that the Hurowitzes were conducting their business in violation of SDC 49.08 and that in doing so they were acting unlawfully and subjecting themselves to the penalties provided in SDC 49.9901. In other words, the manner in which they were conducting their business was unlawful and in our opinion was in violation of that part of the lease which provides that they will not use said premises for 'any unlawful business or purpose whatever.'"

From this background defendant contends that the contract was made in violation of SDC 49.08 and is illegal and void.

As authority for its conclusion the defendant cites Conrad Seipp Brewing Co. v. Green, 23 S.D. 619, 122 N.W. 662. That case deals with an illegal contract of sale of malt liquors. In the course of the opinion, this court quotes with approval the following language of the Kansas court in Pinney v. First Nat. Bank, 68 Kan. 223, 75 P. 119, 1 Ann.Cas. 331, viz., "Where a statute expressly provides that a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal, and there can be no recovery thereon, although such statute does not in express terms prohibit the contract, nor pronounce it void."

In further support of this contention defendant points to the fact that the italicized proviso of § 1336, Rev.Code 1919, supra, was deleted by the legislature in enacting SDC 49.0802 as Section 2 of Ch. 155, Laws of 1933. The argument of defendant is that this proviso was was eliminated for a purpose, and the legislature having declared (SDC 49.0801, section 1, Ch. 155, Laws 1933) it to be **unlawful** for persons to engage in business under a fictitious name without compliance it is reasonable to believe that this proviso was deleted to make clear it intended all that such persons should do prior to compliance to be illegal and void.

■ We are not persuaded that SDC 49.08 reveals such a legislative intention as defendant reads therefrom. As to the primary purpose of the legislature in enacting SDC 49.08, we are not in doubt; it sought to afford the public protection against fraud and deceit. It is unbelievable that in so doing it intended to provide a means whereby fraud could be perpetrated with impunity. As the Maine court so well said in Lipman v. Thomas, 143 Me. 270, 61 A.2d 130, at page 132, "We cannot conceive that it was the intention of the legislature that a debtor should escape payment of an otherwise legal debt because the creditor has by adopting a name other than his own rendered himself liable to a fine through failure to file the required certificate." The Kentucky court in construing our type of statute expressed the same thought in Hayes v. Providence Citizens' Bank & Trust Co., 218 Ky. 128, 290 S.W. 1028, 1029, 59 A.L.R. 450, in these words, "From these cases, then it may be taken as settled that, in

general, the object of this statute is for the protection of the public to give them information as to the persons with whom they deal and to afford them protection against fraud and deceit. But this object is certainly not furthered by permitting the statute to be used as an instrument of fraud whereby one may obtain the goods, property, or service of another and then refuse to pay him for it solely because the latter has failed to file the certificate referred to in the statute."

■ With the foregoing thinking in mind, we consider the argument of defendant that the elimination of the proviso from the re-enacted section carried forward as SDC 49.0802, supra, indicates a legislative intention to render illegal and void all that was done by the described persons before filing the required statement. In substance that section as re-enacted provides "No person or firm engaged in conducting * * * business * * * contrary to * * * section 49.0801 shall maintain any action * * * to * * * enforce any right claimed to be due or arising out of the operation of said business **until** the statement required by section 49.0801 has been filed."

The inquiry which suggests itself is why did the legislature include this section in the amendatory act of 1933. Such a provision was not required to grant the right to maintain actions on contracts to be made or causes of action to arise after filing the required statement; the right to maintain actions in such cases would follow as a matter of course. On the other hand, it is equally clear that such a provision was not required to deal with transactions or events taking place before filing such a required statement if the legislature deemed those who failed to comply to be without power to make contracts or to acquire rights. Hence it becomes apparent that the section was included because the legislature intended the described parties to have power to make valid contracts and acquire rights but to withhold the right to maintain actions until they filed the required statement. The section was intended to induce compliance. By the same process of reasoning we have become convinced that the italicized proviso was deleted because it was considered redundant.

■ As we have indicated, it is our opinion that SDC 49.0802 clearly reveals a legislative intention to permit the described persons to make valid contracts before filing the required statement. That conviction is strengthened because we deem it improbable that the legislature would implement and invite fraud by the very measure it was enacting to afford protection against fraud. The revealed intention of the legislature is controlling and therefore Conrad Seipp Brewing Co. v. Green, and American Legion Holding Co. v. Hurowitz, supra, are without decisive significance in this action.

We hold the contract made between the copartners and defendant to be valid.

The overwhelming weight of authority supports the foregoing conclusion. Many of the cases are collected in the annotations 45 A.L.R. 198 and 42 A.L.R.2d 516.

Being of the opinion that the trial court did not err in denying the motion of the defendant, the judgment is affirmed.

RENTTO, P. J., and ROBERTS, J., concur.

HANSON and BOGUE, JJ., concur in result by opinion.

BOGUE, J. I concur in this opinion with the exception of the reasons assigned for holding the assignment to the plaintiff valid. It is my opinion if the nonassignment clause in the contract could void the assignment under any circumstances we would be compelled to hold it void here. If this were a question of an assignment of a performance of duty where the skills and ability of the contractor were important I could understand how the personnel of the assignee might be material. Where, however, the assignment is of a right made after the contract has been fully completed on the part of the contractor and long after the obligor has breached the contract I cannot see where the personnel of the assignee is material. However, I agree that the nonassignability clause in this contract does not void the assignment.

I agree that we must interpret the nonassignability clause in the contract so that the legal effect given thereto will be

such as to attain the intended factual result. Clearly, the language of said clause shows that the parties intended to prevent an assignment of both the performance of duties and of money due or to become due prior to the time that the contractor had fully and completely performed his part of the contract. In this case, however, the contractor fully and completely performed his part of the contract as shown by the architect's certificate. So far as the record shows the defendant breached this contract in November of 1951 by failing to pay the balance due the contractor. The contract specifically provided that time was of the essence. The contractor made no assignment until April of 1954. The money due the contractor actually became a chose in action by reason of the breach of the contract on the part of the defendant. In this case if defendant had complied with the terms of the contract the situation of which it now complains could not have arisen.

The courts have had no difficulty in holding that a general nonassignability clause in a contract does not preclude an assignment of a chose in action for a breach of contract. Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335, 182 P.2d 182. The clause now before us contains the additional words of "Nor shall the contractor assign any moneys due or to become due to him hereunder, without the previous consent of the owner." Defendant contends that these additional words make the assignment in this case void and therefore prevents plaintiff from bringing this action. When these parties entered into this contract they certainly intended that each would comply with the terms thereof. We must assume that defendant at that time intended to pay the contractor in accordance with its agreement. If defendant had so paid there could have been no assignment to the plaintiff. It seems clear to me, therefore, that the parties never intended to prevent an assignment of a chose in action which arose by reason of defendant's breach.

Defendant contends, however, that the language as used precludes any other interpretation than the one on which it is relying. I do not agree with this contention. The matter of language and its interpretation as used in non-

assignability clauses is well discussed in the case of Allhusen v. Caristo Construction Corp., 303 N.Y. 446, 103 N.E.2d 891, 37 A.L.R.2d 1245, cited in this opinion. The language as used in the clause now before us is similar to the language used in the cases of Manchester v. Kendall, 51 N.Y.Super. 460 and Sacks v. Neptune Meter Co., 144 Misc. 70, 258 N.Y.S. 254. Both cases are discussed in the Allhusen case, supra, wherein the court stated [303 N.Y. 446, 103 N.E.2d 892], "they are authority only for the proposition that, in the absence of language clearly indicating that a contractual right thereunder shall be nonassignable, a prohibitory clause will be interpreted as a personal covenant not to assign." In the Allhusen case the nonassignability clause expressly made any assignment **void**. This language is clearly distinguishable from the language used in the clause now before us and the court in said case did so distinguish the language from that used in the Manchester and Sacks cases. I believe that the ruling as set out in the Manchester and Sacks cases is applicable here.

I believe that it could be said here from the language as used and from the plain intention of the parties that the nonassignability clause did not prohibit the assignment to the plaintiff. In any event, however, it is my opinion that the language as used does not clearly indicate that an assignment of the money due would be void. It is at most, therefore, a personal covenant not to assign and if defendant was harmed by breach of such covenant it could in a proper action recover damages from the contractor. However, in such case the breach by the defendant could be an issue.

I am authorized to say that Judge Hanson concurs in the foregoing opinion.