Leo I. GRADY, d/b/a Grady Construction Company, Plaintiff and Appellant,

v.

COMMERS INTERIORS, INC., Defendant and Respondent.

No. 12253.

Supreme Court of South Dakota.

Argued May 15, 1978.

Decided Aug. 3, 1978.

T. R. Pardy of Mumford, Protsch, Sage & Pardy, Howard, for plaintiff and appellant.

John L. Foley of Foley & Foley, Watertown, for defendant and respondent.

DUNN, Chief Justice.

This is a contract action in which the plaintiff alleges that the defendant breached a contract for carpet installation which had been assigned to the plaintiff. The defendant relies on a contract provision forbidding assignment of the contract unless written consent is obtained from the defendant. The Circuit Court for the Fourth Judicial Circuit, sitting without a jury, found for the defendant. We reverse the judgment and remand for the purpose of making further findings.

On February 9, 1972, the defendant, Commers Interiors, Inc., entered into a contract with Paul Klapprodt, doing business as Tri-State Floor Crafters, whereby Mr. Klapprodt was to install 5,456 yards of carpet in Sioux Valley Hospital. Paragraph (X) of the contract states that the sub-contractor agrees:

"Not to assign or sub-let this Sub-Contract or any part thereof and not to assign any money due or to become due hereunder without first obtaining the written consent of the Contractor thereto."

Mr. Klapprodt was having financial trouble subsequent to this date, and he contacted Mr. Grady, the plaintiff, about purchasing the contract from him. Mr. Grady agreed to buy it if Commers Interiors, Inc., would approve. Mr. Grady testified that he talked by telephone with Fred Commers, President of Commers Interiors, Inc., who welcomed the assignment and told Mr. Grady that he would send a letter agreeing to put Mr. Grady's name on future disbursements and approving the assignment.

Fred Commers did not testify, but his brother Joseph, Vice President of Commers Interiors, Inc., did. His version of the arrangement was that he thought Mr. Grady was going to give Mr. Klapprodt financial backing, not that he was taking over the contract. The record contains the following items:

(1) a letter from Joseph Commers dated April 11, 1972, agreeing to add Grady's name to any disbursements toward the carpet installation;

(2) a letter from Joseph Commers to Grady on April 12, 1972, listing the number of yards of carpet needed and the amount of adhesive ordered;

(3) a letter from Fred Commers to Henry Carlson Co. in August 1972, concluding, "You may feel free to notify our subcontractor Grady Construction Company and Paul Klapprodt to proceed with the room installation," and

(4) a copy of the assignment agreement from Klapprodt to Grady, which Joseph Commers admitted was sent to him and kept in the office files.

Neither Mr. Grady nor Mr. Klapprodt was called when the time came to do the carpeting work, apparently because of some problem with Mr. Klapprodt's seaming layout. Since the trial court did not determine whether a breach had occurred, the reason for ignoring Klapprodt and Grady is not

clear. Mr. Grady sued for $3,000 in lost profits, plus $1,125 spent in preparing to do the carpeting work in reliance on Commer's oral agreement.

The trial court concluded that no contractual relationship existed between Mr. Grady and Commers Interiors, Inc. It applied SDCL 53–8–7, which states that "[a] contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise." In its memorandum opinion, it stated that Mr. Grady should have been put on notice when Commers Interiors, Inc., did not supply the written consent to the assignment that Fred Commers had promised he would supply when he spoke with Grady by telephone. Although Mr. Grady proposed findings on the issues of waiver, estoppel and ratification of the assignment, the court made no findings on those issues.

■ This court has held that a provision in a contract similar to the one in this case, prohibiting assignment of a contract or money due thereunder, is valid and enforceable. *Mellgren Plumbing Shop v. Lewis and Tinsley, Inc.,* 1958, 77 S.D. 193, 90 N.W.2d 78. In *Trubowitch v. Riverbank Canning Co.,* 1947, 30 Cal.2d 335, 182 P.2d 182, a case cited by this court in *Mellgren,* supra, the California Supreme Court stated the established rule that a provision in a contract against assignment does not preclude the assignment of money damages for breach of contract. 6A C.J.S. Assignments § 36, p. 641. See also *Communale v. Traders & General Insurance Company,* 1958, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883, and *Groce v. Fidelity General Insurance Company,* 1968, 252 Or. 296, 448 P.2d 554. Since Klapprodt assigned "all right, title and interest in and to the attached contract and the proceeds described therein" to Grady, we believe that Grady gained the right to sue for breach of contract in his own name. *Bottum v. Herr,* 1968, 83 S.D. 542, 162 N.W.2d 880, and *J. F. Anderson Lumber Co. v. National Surety Co.,* 1926, 49 S.D. 235, 207 N.W. 53. For this reason, we conclude that Grady is entitled to a finding on the issue of whether Commers Interiors, Inc., breached the contract.

■ In determining the breaching party, the trial court will be confronted with the issue of whether Klapprodt's assignment of the contract to Grady was a breach of the contract. Although the undisputed evidence is that no written consent for the assignment was given, Mr. Grady is entitled to a finding on the issue of whether Commers Interiors, Inc., is equitably estopped from raising that as a defense. *Bell v. Midland National Life Insurance Co.,* 1960, 78 S.D. 349, 102 N.W.2d 322; *Essington v. Buchele,* 1962, 79 S.D. 544, 115 N.W.2d 129.

The general rule on waiver of a nonassignment clause is as follows:

"A provision forbidding one party to make an assignment of his right is solely for the advantage of the other party who is under the correlative duty. That other party can waive the benefit of the provision, either before or after an assignment has been made. A mere expression of willingness, made to either the assignor or assignee, acted on by them, makes the assignment effective." 4 Corbin on Contracts, § 873, p. 496.

Corbin goes on to discuss estoppel:

"To create such an estoppel, the obligor must have so conducted himself as to induce the assignee to believe that the defense or counterclaim that is later asserted did not exist and to change his position materially in reasonable reliance thereon. Also, the obligor must have had reason to forsee some such change of position in reliance." 4 Corbin on Contracts, § 899, pp. 604–605.

See also, *Des Moines Blue Ribbon Distributors v. Drewrys, Ltd.,* 1964, 256 Iowa 899, 129 N.W.2d 731, and *Orkin Exterminating Company v. Burnett,* 1966, 259 Iowa 1218, 146 N.W.2d 320. The evidence of Commers' conduct was sufficient to raise the issues of waiver, estoppel and ratification and failure to make findings on those issues was reversible error. *Bell v. Midland National Life Insurance Co.,* supra.

We wish to make it clear that we express no opinions as to which party breached the contract or as to whether Commers Interiors, Inc., is estopped from raising the lack of consent to the assignment as a defense. Those are matters for the trial court to determine on remand.

The judgment is reversed, and the matter is remanded to the trial court for further action consistent with this opinion.

All the Justices concur.