**HARRIS v. TIPTON, Adm'x.**

No. 28606. May 23, 1939.

A. E. White, for plaintiff in error.

Varner & Varner, for defendant in error.

DANNER, J. The plaintiff recovered from the defendant, who had formerly been his partner, one-half of an amount which the defendant had recovered from the state of Oklahoma, after the dissolution of their partnership, for damages to the former partnership property. The defendant appeals. The plaintiff died and the action was revived in the name of Gladys Tipton, his administratrix. We shall use the term "plaintiff" interchangeably, referring either to the original plaintiff or his administratrix.

Stated generally, the facts are these: Plaintiff and defendant were equal partners in the lumber business in the town of Wister, Okla. On April 17, 1927, certain personal property of the partnership was damaged by a flood, due to negligence in the construction of a state highway. Approximately one year thereafter the plaintiff proposed in writing to buy the entire interest of the partner in said partnership for the sum of $3,250, and the payment of all unpaid taxes by the plaintiff. Or, in the same proposition, he offered to sell his entire interest to the defendant on the same terms. The offer to sell was accepted by the defendant and a bill of sale was drawn up, consummating the agreement. It was signed by the plaintiff and delivered to the defendant, the defendant paid the aforesaid purchase price, and paid the taxes, and thereafter operated the business as his own.

Subsequently, about three years after the dissolution of the partnership, and in 1931, the state Legislature passed an act authorizing property owners at Wister (including the defendant) to sue the state for damages on account of the flood. Pursuant to that authority the defendant sued, recovered and collected approximately $7,000 from the state, for the aforesaid damage which had been done the partnership property prior to the dissolution. During the prosecution of that suit against the state by the present defendant, he expended approximately $300 in maintaining the action, and made several trips to Oklahoma City in that connection. During that time no negotiations or conversations were had between the parties concerning the plaintiff's right, if any, to share in the possible recovery. The plaintiff did not furnish any of the expense money nor did he engage in any activities in connection with that suit.

Thereafter the plaintiff instituted the present action, to recover from the defendant half of the amount which the defendant had recovered from the state of Oklahoma. The trial judge, without a jury, rendered judgment for the plaintiff as aforesaid.

Thus, and as a simpler summary of the facts, chronologically the events occurred in the following order:

(1) The partnership property was flooded and damaged.

(2) The plaintiff conveyed all of his interest in the partnership and partnership property to the defendant.

(3) The Legislature passed an act authorizing suit.

(4) The defendant sued, recovered and collected judgment against the state.

(5) Plaintiff filed the present action against the defendant.

The contract by which the partnership was dissolved and plaintiff conveyed his interest to defendant contains the following provisions (Ward being plaintiff and Harris being defendant):

"Know All Men By These Presents. That I, B. F. Ward, of Wister, LeFlore County, Oklahoma, in consideration of the sum of Three Thousand Two Hundred Fifty and 00/100 Dollars ($3,250.00), to me in hand paid, the receipt of which is hereby acknowledged, do hereby sell, convey, set over and deliver unto M. L. Harris, of Wister, Oklahoma, my entire interest in and to all of the property of the Ward-Harris Lumber Company, consisting of planing mill, and all wagons, tools and equipment, together with the mill sheds and other buildings located upon the right of way of the St. Louis & San Francisco Railway Company, at Wister, Oklahoma, and the lease thereof, also all tools, ma-

chinery and equipment, and all books, accounts, evidences of indebtedness, bank accounts, notes, liens and choses in action, as well as all real property owned by or on account of the partnership of Ward-Harris Lumber Company, the same being this day conveyed by quitclaim deed, together with the entire good will of the business heretofore carried on by Ward-Harris Lumber Company.

"It is the purpose of this contract to dissolve the partnership of Ward-Harris Lumber Company, heretofore existing, and to convey all of the interest of the grantor in and to said business, its good will as well as all property owned by it of every kind, character and description, unto the said M. L. Harris, so that he, the said M. L. Harris, shall be the entire and complete owner of all the property of said partnership including the good will of said business and may henceforth carry on said business as fully and completely as said partnership might do."

The principal argument briefed by the parties is concerned with the question whether, at the time when the bill of sale was executed, there existed any right which was capable of assignment; that is, whether, after the flood and before the assignment, the partnership possessed any right at all in connection with recoupment for the flood damage which was capable of being the subject of transfer to the defendant. The theory of the plaintiff, which was adopted by the trial court, is that, since the state could not have been sued in the absence of a statute permitting same, no chose in action or cause of action belonged to the partnership when the plaintiff sold his interest to the defendant, and that therefore, assuming that it did not exist, it was not and could not have been assigned; further, that when the act was subsequently passed and the defendant recovered judgment, it was the recovery of an unexpected thing, a thing not formerly in existence, not formerly in being, and therefore not in the contemplation of the parties at the time of the sale, and that accordingly the defendant should turn over to his former partner one-half of the amount recovered.

The defendant contends that, though no cause of action existed prior to passage of the act, still a "chose in action" did exist, which "chose in action" ripened into a "cause of action" upon passage of the act; that by the express terms of the bill of sale the plaintiff conveyed to him all choses in action owned at that time by the partnership. The defendant further asserts, however, that even if the right or possibility of recoupment was not a chose in action, still, and by whatever name it might be called, it constituted a part of the "business and property" of the partnership, and that said "business and property" were expressly conveyed to him by the plaintiff.

The question presented is somewhat unique. While many decisions are readily found which on first impression appear to be helpful, most of them, on further examination, reveal distinguishing characteristics. Cases, for instance, involving fraud or mutual mistake of fact, such as those in the annotation at 41 A. L. R. 1452, are clearly dissimilar to the situation here. A great deal of argument was had, both in the trial court and in the brief and oral argument in this court, on the questions heretofore stated, whether the partnership owned either a "chose in action" or a "cause of action" in the absence of a statute permitting suit against the state; the assumption (at least on the part of plaintiff) being that unless such a thing was in existence he could not have transferred or relinquished it.

We prefer to proceed directly to the heart of the controversy, purposely avoiding technical discussion and academic theories involving definitions of the term "chose in action", of which there are several, in favor of what we hope to be a more practical contemplation of just what, in the absence of a statute authorizing suit, the partnership had, if anything. Regardless of whether the state was liable or could become liable by giving its consent, and regardless of any of our recent pronouncements concerning the constitutionality of such statutes, the fact remains that an act was passed and that pursuant to the final judgment of a court of law a cause of action, with the help of the statute, was adjudged **complete**. Though no cause of action could have been perfected without the aid of the statute, the statute alone did not produce the judgment; it was additionally necessary to prove at least this: that a private right had been violated, that injury and damage had resulted therefrom, for which the injured entity sought recovery. This latter thing, whatever it may rightly be called, had always, since the occurrence of the flood, existed. It would have existed if no act had been passed at all. That, plus the statute giving the remedy, perfected the cause of action, or at least a cause of action under the then existing law. The absence of a suitable name for it does not obliterate it. This thing that the partner-

ship had, growing out of the violation of a right and the resulting injury, may have been evaluated as little more than a "**hope**" that the state would consent to suit; a **mere possibility** that such contingency would ripen into a reality; but at any rate the partnership was the owner of that which very probably would serve as the basis of a successful cause of action if suit were permitted, namely, in common words, a **claim**. A claim which might or might not prove enforceable, or of practical value, but nevertheless a claim.

The partnership sustained the damages at the time of the flood. That was when the right to claim damages arose. It is true there was no remedy. When the Legislature passed the act giving permission to sue, it did not create the claim for damages. The claim for damages already existed. The act merely gave permission to enforce the claim in the proper forum, subject to proof.

If we should call this claim by no more dignified term than that of a mere possibility, still the well settled rule of law is that a possibility, coupled with an interest, is assignable. See the many cases and illustrations cited to that effect at 5 C. J. 852, 853, 854.

Not only the record, but human experience and common sense are all at odds with the assumption that the possibility of eventual recoupment did not occur to the parties. The record reveals that the plaintiff discussed the subject, prior to the sale, and was no doubt as familiar with it as defendant was. That evidence was admissible as bearing on the issue of estoppel, as pleaded by defendant. The record further reveals that property owners all over the town of Wister immediately began to compile lists of damages, and that a committee or representatives from the State Highway Commission went to the town within three days after the flood, when defendant took up the matter with them. And when the defendant did so he was presumably acting, of course, in behalf of the partnership, representing the partnership, and is deemed to have done so in the eyes of the law. There had been other instances of the state's giving its consent to suit. A year elapsed between the flood and the partnership dissolution. In view of those circumstances, and with the attendant widespread property damage and the citizens discussing their losses and the question as to what they could do about it, we think it unreasonable to assume that plaintiff, a successful business man, was ignorant of even the possibility of an eventual recovery. We do not assume that he did know of it; we merely state that there is not sufficient basis for the opposite assumption.

The foregoing may serve as a possible distinction between this case and two cases cited by plaintiff, which decisions we neither approve nor disapprove. Hubbard v. Ferry, 141 Wis. 17, 123 N. W. 142, 135 Am. St. Rep. 27; Power v. Wood, 200 Iowa, 979, 205 N. W. 784, 41 A. L. R. 1452. In those cases it was discovered, after the sale by one partner to another, that former clerks had embezzled money, and the former partner was permitted to share in the purchasing partner's recovery of the embezzled money. In one of those cases the sale was merely of "the stock, fixtures and accounts", while in the other it was based expressly upon a prepared statement of assets and liabilities. Those decisions appear to be based mainly on the doctrine of mutual mistake of fact, while in the instant case there is no contention of mutual mistake, but, rather, that nothing in fact existed which could be transferred, known or unknown. There is no contention here that plaintiff did not actually intend to relinquish all that he had. It may be noticed also that plaintiff intended, by the terms of his offer, to acquire all of the defendant's interest if defendant had chosen to sell rather than buy.

We hold that this contingent asset which we have been discussing, if it may be called that, was at least a "claim". We also hold that there is insufficient basis for the assumption that he was not aware of its possibilities or for any assumption of mutual mistake of fact. There is no fraud involved. It then follows, from the broad and all-inclusive language contained in the contract, that plaintiff relinquished not it but his right to share in it or its proceeds. The claim was not owned half by him and half by the defendant, in severalty, but was owned by the partnership, an entity in itself. Red River Valley Cotton Co. v. J. W. Stalcup Merc. Co., 41 Okla. 34, 136 P. 1115.

By the express terms of the instrument, pursuant to plaintiff's own offer, he sold his "entire interest in and to all of the property" of the partnership, and all "books, accounts, evidence of indebtedness, bank accounts, notes, liens and choses in action." He sold the entire good will of the business, and stated the express purpose of dissolving the partnership, and that

it was the purpose thereof "to convey all of the interest of the grantor in and to said business, * * * as well as all property owned by it of every kind, character and description," so that the defendant should be "the entire and complete owner" of the property and the business in such manner as to "henceforth carry on said business as fully and completely as said partnership might do."

While the main contention of plaintiff is that which we have been discussing, he also makes the contention that even if he is incorrect in the foregoing premises, still a cause of action in tort cannot be assigned, citing Kansas City, M. & O. Ry. Co. v. Shutt, 24 Okla. 96, 104 P. 51. But in that case it was the party who was sued on the tort who raised the nonassignability. Here possibly the state could have raised the question, but did not do so. An assignor is not permitted to raise it as against the assignee, and it is right and just that he should not be permitted to do so, for a more perfect illustration of the necessity for the doctrine of estoppel could hardly be stated. The rule that an assignor cannot as against his assignee allege nonassignability is well settled. 4 Am. Jur. 325; 6 C. J. S. 1152; 5 C. J. 940, 966; 4 Cyc. 62.

We feel that our construction is consistent with the terms of the contract and also with the practical construction thereof which plaintiff himself gave it, as evidenced circumstantially, at all times until after recovery by the defendant. Accordingly, we must hold that the judgment should be reversed and the cause be remanded, with directions to enter judgment for the defendant, and it is so ordered.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, GIBSON, HURST, and DAVISON, JJ., concur. CORN, J., dissents.