**2001 OK 88**

**In re John A. KAUFMAN, Debtor.**

**No. 96,254.**

Supreme Court of Oklahoma.

Oct. 16, 2001.

⚷147(1)

Lisa K. Endes, Oklahoma City, OK, for Debtor.

Steven W. Bugg, John N. Hermes, Lyle R. Nelson, Oklahoma City, OK, William J. Beckett, Malvern, PA, for Creditor.

KAUGER, J.:

¶1 We are asked to answer two questions:[1] 1) whether anti-assignment provisions restricting the power of an annuitant to sell, mortgage, encumber, or anticipate future payments, by assignment or otherwise, are valid; and 2) whether a purchase agreement between an annuitant/assignor and third-party/assignee for future annuity payments in exchange for a lump-sum payment is enforceable if the annuitant is restricted by an anti-assignment provision from selling, mortgaging, encumbering, or anticipating future payments by assignment or otherwise? The questions are answered as follows: 1) Where the anti-assignment provision is clear and unambiguous in its limitation of the power of the annuitant to sell, mortgage, encumber, or anticipate future payments, by assignment or otherwise, the restriction on alienability is valid.; and 2) Although an anti-assignment provision is valid, well settled principles of Oklahoma law prevent an assignor from enforcing the clause against its assignee.

## FACTS

¶2 In April of 1996, the debtor, John A. Kaufman (Kaufman/debtor/annuitant/assignor), settled a wrongful death claim with Love's Country Stores, Inc. and United States Fidelity & Guaranty Company (USF & G/insurer). In association with his claim, Kaufman signed a Settlement Agreement and Release (settlement agreement) providing that it would be construed and interpret-

---

1. The Bankruptcy Court certified the following questions:

    1) Are contractual provisions in a settlement agreement prohibiting an annuitant from selling, mortgaging, encumbering, or anticipating the future payments or any part thereof by assignment or otherwise, enforceable under Oklahoma law?

    2) If an annuitant is entitled to receive periodic payments pursuant to a settlement agreement containing the above-referenced contractual provisions, but nevertheless enters into a purchase agreement with a third party in which the annuitant sells his or her right to receive the annuity payments in the future to the third party in return for a lump sum paid by the third party to the annuitant, is the purchase agreement between the annuitant and the third party enforceable under Oklahoma law?

    The questions are reformulated pursuant to 20 O.S. Supp.1997 § 1602.1. The style of the case has been corrected pursuant to the unopposed motion filed on June 1, 2001.

    The Court notes that effective November 1, 2001, all transfers of structured settlement payments will be governed by the Structured Settlement Protection Act of 2001, 12 O.S.2001 § 3238 et seq. Section 3241 of the new law requires that all structured settlement agreements be submitted for court or administrative approval. However, § 3245 specifically provides that the act will not apply to transfer agreements reached in

excess of 30 days before the date of enactment [April 10, 2001]. 12 O.S.2001 § 3241 provides:

"No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order or order of a responsible administrative authority based on express findings by such court or responsible administrative authority that:

1. The transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;

2. The payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and

3. The transfer does not contravene any applicable statute or the order of any court or other government authority."

Title 12 O.S.2001 § 3245 provides:

"This act shall apply to any transfer of structured settlement payment rights under a transfer agreement entered into on or after the thirtieth day after the date of enactment of this act; provided that nothing contained herein shall imply that any transfer under a transfer agreement reached prior to such date is either effective or ineffective."

ed in accordance with Oklahoma law.[2] The settlement agreement provides for a lump-sum payment and for periodic monthly payments of $2,008.75 measured by Kaufman's life with a twenty-year payment guarantee.[3] The settlement agreement specifically provides that Kaufman has no "power to sell, mortgage, encumber, or anticipate the future payments by assignment or otherwise".[4]

2. The Settlement Agreement and Release provides in ¶ 13.0:

> "*Governing Law*
> This Settlement Agreement and Release shall be construed and interpreted in accordance with the law of the State of Oklahoma."

3. In essence, the Settlement Agreement and Release is a structured settlement. A structured settlement agreement releases the defendant/obligor from liability in consideration for the agreement to make periodic payments to the claimant over time. The motivation for entering into such an arrangement is not only because of the economics of the transaction to the obligor, but also because of tax benefits which can inure to all parties. *In re Freeman*, 235 B.R. 121–22 (Bkrtcy. M.D.Fla.1999). See also, *Western United Life Assur. Co. v. Hayden*, 64 F.3d 833 (3d Cir.1995). Structured settlements provide a continued income stream, preventing dissipation of the settlement proceeds. *Owen v. CNA Ins. Continental Casualty Co.*, see note 27, infra.

4. The Settlement Agreement and Release provides in ¶ 3.1

> "Plaintiffs agree that they maintain no right to:
> — accelerate or defer said future payments to any time or vary in any respect the payments;
> — receive the present discounted value of future payments;
> — have any control of the investments or funds from which payments are made; have any right to increase or decrease the payments;
> — change or modify the manner, mode or method of meeting any payment or discharging any obligation set forth in this agreement;
> — have power to sell, mortgage, encumber, or anticipate the future payments, or any part thereof by assignment or otherwise."

5. Title 26 U.S.C. § 130(c) (1997) provides:

> "Qualified assignment.—For purposes of this section, the term 'qualified assignment' means any assignment of a liability to make periodic payments as damages (whether by suit or agreement), or as compensation under any workmen's compensation act, on account of personal injury or sickness (in a case involving physical injury or physical sickness)—
> (1) if the assignee assumes such liability from a person who is a party to the suit or agreement, or the workmen's compensation claim, and
> (2) if—

¶ 3 As contemplated by the settlement agreement, the insurer entered into a qualified agreement[5] with SAFECO Assigned Benefits Company (SAFECO) under which SAFECO assumed the responsibility of making Kaufman's periodic payments. Pursuant to the settlement agreement, SAFECO purchased a qualified funding asset[6] in the form of an annuity[7] to ensure

> (A) such periodic payments are fixed and determinable as to amount and time of payment,
> (B) such periodic payments cannot be accelerated, deferred, increased, or decreased by the recipient of such payments,
> (C) the assignee's obligation on account of the personal injuries or sickness is no greater than the obligation of the person who assigned the liability, and
> (D) such periodic payments are excludable from the gross income of the recipient under paragraph (1) or (21) of section 104(a).
> The determination for purposes of this chapter of when the recipient is treated as having received any payment with respect to which there has been a qualified assignment shall be made without regard to any provision of such assignment which grants the recipient rights as a creditor greater than those of a general creditor."

6. Title 26 U.S.C. § 130(d) (1997) provides:

> "Qualified funding asset.—For purposes of this section, the term 'qualified funding asset' means any annuity contract issued by a company licensed to do business as an insurance company under the laws of any State, or any obligation of the United States, if—
> (1) such annuity contract or obligation is used by the assignee to fund periodic payments under any qualified assignment,
> (2) the periods of the payments under the annuity contract or obligation are reasonably related to the periodic payments under the qualified assignment, and the amount of any such payment under the contract or obligation does not exceed the periodic payment to which it relates,
> (3) such annuity contract or obligation is designated by the taxpayer (in such manner as the Secretary shall by regulations prescribe) as being taken into account under this section with respect to such qualified assignment, and
> (4) such annuity contract or obligation is purchased by the taxpayer not more than 60 days before the date of the qualified assignment and not later than 60 days after the date of such assignment."

7. An annuity contract is the exact inverse of a life insurance contract. In return for a lump sum, the insurance company typically promises the annuitant periodic payments that will continue

Kaufman's monthly payments.[8]

¶ 4 After seeing a television commercial involving purchases of structured settlements aired by J.G. Wentworth S.S.C., Limited Partnership (Wentworth/creditor/assignee),[9] Kaufman called and requested the paperwork necessary to complete the sale. *Via* a purchase agreement executed on June 9, 1999, Kaufman sold his right to receive sixty monthly annuity payments of $2,008.75 with a total value of $120,525.00 to Wentworth for a lump sum payment of $80,507.26. The purchase agreement provided that Wentworth was entitled to receive payments beginning in July of 1999 and running through June of 2004. The creditor has received no payments since May of 2000.

■ ¶ 5 Kaufman used the monies received under the purchase agreement to start a trenching business. When the business failed, the debtor filed a voluntary Chapter 13 bankruptcy petition on September 22, 2000.[10] In the bankruptcy petition, the debtor listed the purchase agreement with the creditor as an unsecured claim and proposed that the annuity payments[11] be utilized to fund the Chapter 13 plan. On November 27, 2001, Wentworth filed a motion for relief from the automatic stay requesting permission to seize the contracted-for annuity payments. It is this action and Kaufman's assertion that the purchase agreement is invalid due to the anti-assignment language in the settlement agreement[12]

until the death of the annuitant. The lump sum is determined by the life expectancy of the annuitant, and the insurance company gambles that the annuitant will die prior to actuarial predictions. *Variable Annuity Life Ins. Co. v. Clarke,* 998 F.2d 1295, 1301 (5th Cir.1993) [Reversed on other grounds, 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) ].

8. The qualified assignment and the annuity contract are governed by Washington law. The Qualified Assignment specifically states that the laws of Washington shall govern its interpretation while the annuity contract provides that it shall be construed in accordance with the laws of the state in which the owner resides. SAFECO is identified as the owner of the contract and is shown in the annuity application as being located in Redmond, Washington. Nevertheless, like the settlement agreement, the qualified assignment and annuity contract contain language restricting Kaufman's right to sell, use as collateral or assign the annuity benefits. The Uniform Qualified Assignment provides in pertinent part at ¶ 3:

"... None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered."

The annuity contract contained in the record provides in pertinent part:

"... **ENDORSEMENT**
... No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment....
**PROVISIONS**
... **Benefits** ... Benefit payments may not be advanced, accelerated, commuted, or encumbered by the annuitant or any beneficiary...."
[Emphasis in original.]

The facts as outlined by the Bankruptcy Court also indicate that the annuity contract contains an endorsement providing:
"... IMPORTANT NOTICE
This contract belongs to the owner shown on the application. It will pay all benefits when due exactly as shown on the schedule of benefits. Benefits may not be delayed or paid before they are due. The right to receive benefits may not be sold to anyone else or used as collateral for a loan. This contract has no cash surrender value...."
A perusal of the record does not reveal this endorsement.

9. Wentworth is a factoring company—an entity which purchases future payments for a lump sum. L. Andrada, "Structured Settlements: The Assignability Problem," 9 S. Cal.Inter. L.J. 465 (2000). Wentworth's business is the purchasing of the rights to receive payments coming from royalties, structured settlements, and lotteries. *In re Berghman,* 235 B.R. 683, 688 (Bkrtcy. M.D.Fla.1999).

10. Kaufman originally filed for bankruptcy on May 30, 2000. The petition was dismissed in August of 2000 for failure to resolve payment and tax issues.

11. Generally, annuity contracts are included within the bankrupt's estate and are subject to levy by the trustee. *In re Alexander,* 1999 OK 31, ¶ 17, 980 P.2d 659; *In re Ziegler,* 156 B.R. 151, 154 (Bkrtcy.W.D.Penn.1993).

12. Kaufman also relies on language in the qualified assignment and annuity contract, see note 8, supra. However, because the language of the settlement agreement is sufficient to resolve the assignment issue and because the language in the qualified assignment and annuity contract are governed by Washington law, our decision is

which prompted the bankruptcy court to certify questions to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S. Supp.1997 § 1601 et seq., on May 9, 2001. We set a briefing cycle which was completed on June 25, 2001.

## I.

¶6 **WHERE THE ANTI–ASSIGNMENT PROVISION IS CLEAR AND UNAMBIGUOUS IN ITS LIMITATION OF THE POWER OF THE ANNUITANT TO SELL, MORTGAGE, ENCUMBER, OR ANTICIPATE FUTURE PAYMENTS, BY ASSIGNMENT OR OTHERWISE, THE RESTRICTION ON ALIENABILITY IS VALID.**

¶7 Kaufman asserts that the clear language of the anti-assignment provision of

the structured settlement requires that the provision be enforced. Because the contractual language does not specifically provide that any attempted assignment will be void, Wentworth argues that the anti-assignment provision is invalid.[13]

¶8 An assignment is the expressed intent of one party to pass rights owned to another.[14] It realigns the parties to a contract.[15] Valid assignments pass the assign-

based only on the language of the settlement agreement.

**13.** Wentworth makes two other arguments—one in relation to the Uniform Commercial Code, 12A O.S.1991 § 1–101 et seq. The creditor relies upon 12A O.S.1991 § 9–318 (A) for the proposition that the anti-assignment provision should be declared invalid. Subsection 4 of the statute provides:

"A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or chattel paper or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest."

The assertion is unconvincing. We note that the provision cited has been repealed and replaced by 12A Supp.2001 § 1–9–404 [Relating to rights acquired by assignee.]; 12A Supp.2001 § 1–9–405 [Relating to modifications of an assigned contract.]; and 12A O.S. Supp.2001 § 1–9–406 [Relating to discharge of an account debtor and notice and proof of assigned rights.]. Further, 12A Supp.2001 § 1–9–109(d)(8) exempts transfers of interests to or an assignment of a claim under an insurance policy. Annuities are insurance policies which inversely treat life expectancy. See note, 7, supra. Further, similar arguments have failed in both courts striking anti-assignment provisions and in those upholding the clauses. See, *CGU Life Ins. Co. of America v. Metropolitan Mortgage & Securities Co., Inc.*, 131 F.Supp.2d 670, 676–77 (E.D.Penn.2001); *Wonsey v. Life Ins. Co. of North America*, note 27, infra; *Owen v. CNA Ins. Continental Casualty Co.*, note 27, infra; *Grieve v. General American Life Ins. Co.*, note 23, infra; *In re Nitz*, 317 Ill.App.3d 119, 250 Ill.Dec. 632, 739 N.E.2d 93 (2000).

Wentworth also relies on two provisions of the Restatement (Second) of Contracts in support of its position. Section 317(2) provides:

"A contractual right can be assigned unless

(a) the substitution of a right of the assignee or the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or

(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

(c) assignment is validly precluded by contract."

Restatement (Second) of Contracts § 322 provides in pertinent part:

"... (2) a contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,

(a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation;

(b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective;

(c) is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition...."

Our determination that the contract language clearly and unambiguously precludes assignment places the clause squarely within the exceptions allowing enforcement of anti-assignment provisions outlined in subsection (c) of § 317 [assignment precluded by contractual language] and § 322 [allowing for the expression of a different intent]. See, *Liberty Life Assurance Co. of Boston v. Stone St. Capital, Inc.*, 93 F.Supp.2d 630, 633 (D.Md.2000).

**14.** *Johnson by & through Lackey v. Schick*, 1994 OK 109, ¶7, 882 P.2d 1059; *Hoffmann v. Barnett*, 1946 OK 325, ¶0, 198 Okla. 335, 178 P.2d 89.

**15.** *Sunrizon Homes, Inc. v. American Guar. Investment Corp.*, 1988 OK 145, ¶12, 782 P.2d 103.

or's title, leaving no interest to be reached by a creditor.[16] In Oklahoma, contractual rights are presumed to be assignable.[17] Nevertheless, parties may expressly provide otherwise.[18] The issue here is whether the language utilized in the settlement agreement—stripping Kaufman of the "power to sell, mortgage, encumber, or anticipate the future payments by assignment or otherwise"—is sufficient to support a determination that the annuity payments are inalienable. We determine that it is.

¶ 9 Absent clear, unambiguous language, the majority of courts generally will not honor attempts to restrict the right to assign freely.[19] Some jurisdictions require lan-

guage providing that an assignment will be void or invalid before anti-assignment provisions are upheld.[20] These courts treat anti-assignment provisions as personal covenants which will not invalidate an otherwise proper transfer[21] determining that unless the contractual provision eliminates both the power and the right to assign, an assignment may give rise to damages for breach but will not render the assignment ineffective.[22]

¶ 10 However, a number of courts have enforced anti-assignment provisions similar to the one at issue here which explicitly deprive the assignor of the assignment power.[23] Others are less insistent on the use of

16. *United States v. Chapman*, 281 F.2d 862, 867 (10th Cir.1960); *Oklahoma Oxygen Co. v. Citizens State Bank & Trust Co.*, 1954 OK 228, ¶ 5, 274 P.2d 372–73. *Market Nat'l Bank v. Raspberry* 1912 OK 467, ¶——, 34 Okla. 243, 124 P. 758–59.

17. *Earth Products Co. v. Oklahoma City*, 1968 OK 39, ¶ 0, 441 P.2d 399; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, 1910 OK 279, ¶ ——, 27 Okla. 180, 111 P. 326.

18. *Earth Products Co. v. Oklahoma City*, see note 17, supra; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, see note 17, supra; *Leader Printing Co. v. Lowry*, 1899 OK 121, ¶——, 9 Okla. 89, 59 P. 242.

19. *Bel–Ray Co., Inc. v. Chemrite (PTY) Ltd.*, 181 F.3d 435, 442 (3rd Cir.1999) [Failure of provision to include specific language of avoidance insufficient to void assignments.]; *Pravin Banker Assoc., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2nd Cir.1997) [Language allowing assignments to financial institutions insufficient to avoid assignments to other entities.]; *Cedar Point Apartments, Ltd. v. Cedar Point Investment Corp.*, 693 F.2d 748, 751 (8th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983) [Language indicating that assignment would be allowed only if assignee assumed and agreed in writing to perform and discharge all obligations and liabilities of assignor held invalid.]; *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, 863 F.Supp. 135, 137 (S.D.N.Y. 1994) [Statement in insurance contract that benefits were payable only to insured did not preclude assignment to hospital.]; *Peterson v. District of Columbia Lottery & Charitable Games Control Bd.*, 673 A.2d 664, 666–67 (D.C.App. 1996) [Language providing that owner of a lottery ticket shall be entitled to the prize insufficient to void assignment.]; *Macklowe v. 42nd St. Development Corp.*, 170 A.D.2d 388, 566 N.Y.S.2d 606–07 (1991) [Assignments in contravention of a prohibition clause in a contract are void if

contract contains clear, definite and appropriate language.].

20. *Bel–Ray Co., Inc. v. Chemrite (PTY) Ltd.*, see note 19, supra; *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, see note 19, supra; *Lomas Mortgage U.S.A., Inc. v. W.E. O'Neil Constr. Co.*, 812 F.Supp. 841, 844 (N.D.Ill.1993); *Randal v. Tatum*, 98 Cal. 390, 33 P. 433, 435 (1893); *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612 (Tx.Ct.App.1985); *University Mews Assoc. v. Jeanmarie*, 122 Misc.2d 434, 471 N.Y.S.2d 457, 461 (1983).

21. *International Telecommunications Exchange Corp. v. MCI Telecommunications Corp.*, 892 F.Supp. 1520, 1532 (N.D.Georgia 1995); *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, see note 19, supra; *Owen v. CNA Ins. Continental Casualty Co.*, see note 27, infra; *Sullivan v. International Fidelity Ins. Co.*, 96 A.D.2d 555, 465 N.Y.S.2d 235, 237 (1983).

22. *Bel–Ray Co., Inc. v. Chemrite (PTY) Ltd.*, see note 19, supra; *Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 757 A.2d 526, 531 (2000); *University Mews Assoc. v. Jeanmarie*, see note 20, supra.

23. *CGU Life Ins. Co. of America v. Metropolitan Mortgage & Securities Co., Inc.*, see note 13, supra [Language restricting power of assignment clearly intended to restrict right.]; *Liberty Life Assurance Co. of Boston v. Stone St. Capital, Inc.*, 93 F.Supp.2d 630, (D.Md.2000) [No clearer way to communicate an intent to deny a party the power to assign than to expressly say so.]; *Johnson v. First Colony Life Ins. Co.*, 26 F.Supp.2d 1227, 1230 (C.D.Cal.1998) [Provision restricting power to assign very clearly prohibited rights of assignability.]; *Grieve v. General American Life Ins. Co.*, 58 F.Supp.2d 319, 321 (D.Vt.1999) [Upholding anti-assignment provision that provided "nor shall [the plaintiff] ... have the power to sell ... or anticipate the periodic payments, or any part thereof, by assignment or other-

any particular phraseology and simply uphold anti-assignment provisions if the prohibitive language utilized is clear and unambiguous [24] while some jurisdictions enforce such provisions as a general matter.[25] Decisions upholding anti-assignment provisions containing language limiting the power of assignment are characterized as being within the modern legal approach to the assignability of contracts.[26]

¶ 11 The courts addressing the precise issue of whether an anti-assignment provision in a structured settlement agreement prohibiting the alienation of future payments made under an annuity policy is enforceable have reached differing results. No clear majority has emerged. Rather, the decisions are divided almost evenly.[27]

¶ 12 The jurisdictions striking anti-assignment provisions have done so: on the basis that no harm comes to the party obligated to perform by the mere assignment of contractual payments;[28] due to a lack of specific language binding the tort victim to assign-

wise....".]; *Henderson v. Roadway Express*, 308 Ill.App.3d 546, 242 Ill.Dec. 153, 720 N.E.2d 1108, 1110 (1999), *appeal denied*, 188 Ill.2d 564, 246 Ill.Dec. 123, 729 N.E.2d 496 (2000) [Upholding anti-assignment provision providing that the plaintiff had no power to sell, mortgage, encumber, or anticipate periodic payments or any part thereof, by assignment or otherwise.]. See also, *Cedar Point Apartments, Ltd. v. Cedar Point Investment Corp.*, note 19, supra [Indicating that contractual language aimed at restricting the power of assignment would be upheld.]; *Owen v. CNA Ins. Continental Casualty Co.*, note 27, infra [Striking anti-assignment provision but indicating that had the contract included language indicating that the "power" to assign had been limited, provision would have been upheld.].

24. *Grieve v. General American Life Ins. Co.*, see note 23, supra; *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Ins. Co.*, 874 P.2d 1049, 1052 (Colo.1994); *Antal's Restaurant v. Lumbermen's Mutual Casualty Co.*, 680 A.2d 1386, 1388 (D.C.App.1996); *Peterson v. District of Columbia Lottery*, 673 A.2d 664, 667 (D.C.App.1996); *Henderson v. Roadway Express*, 308 Ill.App.3d 546, 242 Ill.Dec. 153, 720 N.E.2d 1108, 1110 (1999); *Cloughly v. NBC Bank–Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex.App.1989); *Portland Elec. & Plumbing Co. v. Vancouver*, 29 Wash.App. 292, 627 P.2d 1350–51 (1981); *Hanigan v. Wheeler*, 19 Ariz.App. 49, 504 P.2d 972, 974 (1972).

25. See, *Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 718 (10th Cir.1985) [Anti-assignment clauses valid, bargained for provisions.]; *Forsythe v. Elkins*, 216 Mont. 108, 700 P.2d 596, 599 (1985) [Contract containing nonassignment provision precludes establishment of privity between alleged assignee and the other party.]; *Cheney v. Jemmett*, 107 Idaho 829, 693 P.2d 1031 (1984) [Provisions in bilateral contracts which forbid or restrict assignment without the consent of the obligor have generally been upheld as valid and enforceable.]; *Augusta Medical Complex v. Blue Cross of Kansas*, 230 Kan. 361, 634 P.2d 1123 (1981) [Assignment barred where contract expressly prohibits the same.]; *Wilkie v. Becker*, 268 Minn. 262, 128 N.W.2d 704 (1964) [Assignment barred where contract expressly prohibits the same.]; *Forsythe v. Elkins*, 216 Mont. 108, 700 P.2d 596 (1985) [Assignment barred where contract expressly prohibits the same.].

26. *Rumbin v. Utica Mut. Ins. Co.*, see note 22, supra.

27. Striking anti-assignment provisions: *Wonsey v. Life Ins. Co. of N. America*, 32 F.Supp.2d 939, 943 (E.D.Mich.1998); *Owen v. CNA Ins. Continental Casualty Co.*, 167 N.J. 450, 771 A.2d 1208, 1218 (2001); *Rumbin v. Utica Mut. Ins. Co.*, see note 22, supra; *In re Freeman*, see note 3, supra. See also, *State Farm Life Ins. Co. v. Florida Asset Financing Corp.*, 786 So.2d 1–2 (Fla. 4th DCA 2000) [Where release did not specifically bind tort victims to assignment provision, assignment allowed in face of contractual language contemplating the possibility of assignment.]; *In re Estate of Powless*, 315 Ill.App.3d 859, 248 Ill.Dec. 403, 734 N.E.2d 111, 117 [Assignment allowed where no contractual language to prohibit alienation.]; *In re Berghman*, see note 9, supra [Provision prohibited right to assign contract, not right to receive payments.]. Upholding anti-assignment provisions: *CGU Life Ins. Co. of America v. Metropolitan Mortgage & Securities Co., Inc.*, see note 13, supra; *Liberty Life Assurance Co. of Boston v. Stone St. Capital, Inc.*, see note 23, supra; *Grieve v. General American Life Ins. Co.*, see note 23, supra; *Johnson v. First Colony Life Ins. Co.*, see note 23, supra; *Shaffer v. Liberty Life Assur. Co. of Boston*, 319 Ill.App.3d 1048, 253 Ill.Dec. 837, 746 N.E.2d 285, 291 (2001); *In re Nitz*, 317 Ill.App.3d 119, 250 Ill.Dec. 632, 739 N.E.2d 93, 96 (2000); *Piasecki v. Liberty Life Assurance Co. of Boston*, 312 Ill.App.3d 872, 245 Ill.Dec. 340, 728 N.E.2d 71–72 (2000); *Green v. Safeco Life Ins. Co.*, 312 Ill.App.3d 577, 245 Ill.Dec. 140, 727 N.E.2d 393, 395–96 (2000); *Henderson v. Roadway Express*, see note 24, supra. See generally, Annot., "Assignability of Proceeds of Claim for Personal Injury or Death," 33 A.L.R.4th 82 (1984); Annot., "Validity of Anti-Assignment Clause in Contract," 37 A.L.R.2d 1251 (1954).

28. *Wonsey v. Life Ins. Co. of N. America*, see note 27, supra.

ment restrictions;[29] or because the anti-assignment provisions circumscribe the right, but not the power, to assign.[30] The courts enforcing anti-assignment provisions in the structured settlement context have grounded their decisions on: the premise that such provisions, included for the benefit of the insurer, could not be waived by the annuitant;[31] policy arguments supporting enforcement of the provisions in relation to structured settlements;[32] or the clear language of the provision taking it out of the general rule of assignability.[33]

■ ¶13 In Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties.[34] In considering whether contractual rights may be alienated, we look to the parties' intent manifested by the agreement's language.[35] Here, the settlement agreement specifically provides that Kaufman has no "power to sell, mortgage, encumber, or anticipate the future payments by assignment or otherwise".[36] The anti-assignability clause is a condition of the contract for which the parties bargained.[37] The language is clear and definite[38] in its intent to prohibit Kaufman from alienating—by assignment or otherwise—the annuity payments. We determine that where the anti-assignment provision is clear and unambiguous in its limitation of the power of the annuitant to sell, mortgage, encumber, or anticipate future payments, by assignment or otherwise, the restriction on alienability is valid. Oklahoma's tenets of contract construction, as well as decisions from other jurisdictions upholding anti-assignment provisions limiting the assignor's "power" to alienate contractual rights[39] along with the general policy considerations favoring steady income, long-term security and tax-favorable treatment underlying structured settlements[40] support our determination.

---

**29.** *State Farm Life Ins. Co. v. Florida Asset Financing Corp,* see note 27, supra.

**30.** *Owen v. CNA Ins. Continental Casualty Co.,* see note 27, supra; *Rumbin v. Utica Mut. Ins. Co.,* see note 22, supra.

**31.** *Johnson v. First Colony Life Ins. Co.,* see note 23, supra.

**32.** *Grieve v. General American Life Ins. Co.,* see note 23, supra [Such settlements intended to preserve the injured person's long-term financial security.]. See also, L. Andrada, "Structured Settlements: The Assignability Problem," note 9, supra at 468–471 [Structured settlement agreements address concerns of premature dissipation of assets, investment considerations, and economic issues such as inflation, tax benefits and interest rates.].

**33.** *Grieve v. General American Life Ins. Co.,* see note 23, supra; *Henderson v. Roadway Express,* see note 23, supra.

**34.** Title 15 O.S.1991 § 152; *Sunrizon Homes, Inc. v. American Guar. Investment Corp.,* see note 15, supra.

**35.** Title 15 O.S.1991 § 155; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.,* see note 17, supra.

**36.** See note 4, supra.

**37.** See, *Johnson v. First Colony Life Ins. Co.,* note 23, supra.

**38.** Contractual terms are ambiguous only if they can be interpreted as having two different meanings. *K & K Food Serv., Inc. v. S & H, Inc.,* 2000 OK 31, ¶8, 3 P.3d 705; *Osprey L.L.C. v. Kelly–Moore Paint Co., Inc.,* 1999 OK 50, ¶13, 984 P.2d 194. This Court will not create an ambiguity by using a forced or strained construction. *Osprey L.L.C. v. Kelly–Moore Paint Co., Inc.,* this note, supra; *Wynn v. Avemco Ins. Co.,* 1998 OK 75, ¶16, 963 P.2d 572.

**39.** Similar language restricting the power of alienation has been found sufficient to uphold anti-assignment provisions. *CGU Life Ins. Co. of America v. Metropolitan Mortgage & Securities Co., Inc.,* see note 13, supra; *Liberty Life Assurance Co. of Boston v. Stone St. Capital, Inc.,* see note 23, supra; *Johnson v. First Colony Life Ins. Co.,* see note 23, supra; *Henderson v. Roadway Express,* see note 23, supra. See also, *Cedar Point Apartments, Ltd. v. Cedar Point Investment Corp.,* note 19, supra; *Owen v. CNA Ins. Continental Casualty Co.,* note 27, supra.

**40.** *Henderson v. Roadway Express,* see note 23, supra. United States Treasury Department, "General Explanations of the Administration's Revenue Proposals," (Feb.1998) providing in pertinent part at 20:
> "... Congress enacted favorable tax rules intended to encourage the use of structured settlements—and conditioned such tax treatment on the injured person's inability to accelerate, defer, increase or decrease the periodic payments because recipients of structured settlements are less likely than recipients of lump sum awards to consume their awards too quickly and require public assistance...."

## II.

¶ 14 **ALTHOUGH AN ANTI–ASSIGN-
MENT PROVISION IS VALID,
WELL SETTLED PRINCIPLES OF
OKLAHOMA LAW PREVENT AN
ASSIGNOR FROM ENFORCING
THE CLAUSE AGAINST ITS AS-
SIGNEE.**

■ ¶ 15 Kaufman argues that a finding that the anti-assignment provision is valid requires that the purchase agreement with Wentworth be declared void and unenforceable. Wentworth asserts that notwithstanding the anti-assignment provision in the settlement agreement, a debtor/assignor may not rely on principles of nonassignability to defeat the contract as against its creditor/assignee.[41] We agree.

¶ 16 Kaufman seeks to void the purchase agreement on general public policy grounds intended to protect tort victims.[42] He also points to the recent enactment of the Structured Settlement Protection Act of 2001 (Structured Settlement Act), 12 O.S.2001 § 3238 et seq, in support of an argument that the anti-assignment provision should be enforceable on public policy grounds.

¶ 17 Clearly, the Legislature was concerned with the long-term economic well being of tort victims and their dependents when it enacted the Structured Settlement Act. Otherwise, there would be no need for court or administrative approval prior to assignment based on findings that the transfer is in the best interests of the payee and that the annuitant had either sought professional advice or waived the right to do so.[43] If the Structured Settlement Act were applicable,

the purchase agreement here would be unenforceable—no prior court or administrative review having been received prior to the sale. However, § 3245 of the Structured Settlement Act [44] also provides that nothing in the act shall [45] imply that any transfer concluded prior to the effective date of its provisions is either effective or ineffective.

■ ¶ 18 Just as it is clear and undisputed that the provisions of the Structured Settlement Act are inapplicable to the transfer here, the mandatory language of § 3245 also directs that nothing associated with the enactment is intended to "imply" that agreements entered before the effective date are valid or invalid. Our power to void a contract as being in contravention of public policy is delicate and undefined. We exercise it only in cases free from doubt.[46]

¶ 19 Certainly, under 12 O.S.2001 § 3245, there is a question as to the efficacy of general public policy considerations and their application to structured settlements entered before the effective date of the Structured Settlement Act. This Court will not, with the expressed intent of the Legislature that no implications be drawn on the validity of purchase agreements not governed by the enactment, void the contract on public policy principles underlying the statutory scheme.

■ ¶ 20 If we were inclined to accept the argument for avoidance of the contract on public policy grounds, we would be hard pressed to ignore a principle characterized as well settled in Oklahoma jurisprudence as early as 1939. The following language appears in *Harris v. Tipton*, 1939 OK 256, ¶ 17, 185 Okla. 146, 90 P.2d 932:

---

See also, notes 3 and 32, supra.

41. Resolution of this issue may be important in subsequent bankruptcy proceedings. See, *In re Berghman*, note 9, supra, in which the assignment of annuity benefits was determined to be an exception to the debtor's general discharge of debts.

42. See discussion and accompanying footnotes, ¶ 13, supra.

43. Title 12 O.S.2001 § 3241, see note 1, supra.

44. Title 12 O.S.2001 § 3245, see note 1, supra.

45. The use of "shall" generally signifies a legislative command. *United States through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman*, 1991 OK 59, ¶ 8, 814 P.2d 147; *Forest Oil Corp. v. Corp. Comm'n*, 1990 OK 58, ¶ 26, 807 P.2d 774. Nevertheless, the term can be permissive. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶ 9, 619 P.2d 869.

46. *Kincaid v. Black Angus Motel, Inc.*, 1999 OK 54, ¶ 9, 983 P.2d 1016; *Warren v. Dodrill*, 1935 OK ——, ¶ ——, 173 Okla. 634, 49 P.2d 137.

"An assignor is not permitted to raise [nonassignability] as against the assignee, and it is right and just that he should not be permitted to do so, for a more perfect illustration of the necessity for the doctrine of estoppel could hardly be stated. The rule that an assignor cannot as against his assignee allege nonassignability is well settled."

*Harris* involved an attempt by an assignor to void alienation of what he believed, at the time, to be an unenforceable tort claim to his former partner/assignee. When the partner/assignee was able to recover on the tort claim against the state, the assignor sought to recover what he believed to be his portion of the recovery.

¶ 21 In Oklahoma, an assignor cannot maintain the inequitable position of asserting, as against its assignee, nonassignability.[47] Based on this well-settled legal principle, we determine that an assignor of a contract containing a valid anti-assignment provision may not invoke the clause as against its assignee.

## CONCLUSION

¶ 22 Policy supporting free alienability is not so absolute as to override contract provisions clearly prohibiting assignment.[48] To hold otherwise would require us to ignore validly executed, and freely made, anti-assignment provisions in contravention of well settled principles of Oklahoma's contract law allowing parties to include such provisions in their negotiations.[49] This we will not do. Rather, we maintain a healthy respect for the power of independent persons to bargain for, or away, contractual provisions and maintain our position that it is not this Court's province to remake contracts to suit the changing whims of contracting parties.[50] Although we recognize the rights of contracting parties to negotiate for valid anti-assignment provisions, we also note that well settled principles of Oklahoma law prohibit an assignor, as against an assignee, to allege nonassignability.[51]

¶ 23 The bankruptcy court certified the questions as unanswered in Oklahoma law. Nevertheless, we note that the responses supplied are grounded in well settled principles of contract construction and our jurisprudence relating to the relationship between an assignor and an assignee.

## QUESTIONS ANSWERED.

The questions are answered as follows:

1) Where the anti-assignment provision is clear and unambiguous in its limitation of the power of the annuitant to sell, mortgage, encumber, or anticipate future payments, by assignment or otherwise, the restriction on alienability is valid.

2) Although an anti-assignment provision is valid, well settled principles of Oklahoma law prevent an assignor from enforcing the clause against its assignee.

---

47. *State Farm Fire & Casualty Ins. Co. v. Farmers Ins. Exchange*, 1971 OK 120, ¶ 9, 489 P.2d 480; *Harris v. Tipton*, 1939 OK 256, ¶ 0, 90 P.2d 932. Further, 15 O.S.1991 § 235 requires that a party seeking the nonconsensual rescission of a contract restore the unconsenting party "everything of value received." Here, not only does Kaufman not propose to repay the lump-sum payment received, he seeks to utilize assigned payments to fund his bankruptcy plan. Title 15 O.S.1991 § 235 provides in pertinent part:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules ...
2. He must restore the other party everything of value which he has received from him under the contract ..."

48. *Rumbin v. Utica Mut. Ins. Co.*, see note 22, supra; *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Ins. Co.*, 874 P.2d 1049, 1054–55 (Colo.1994).

49. *Leader Printing Co. v. Lowry*, see note 18, supra; *Earth Products Co. v. Oklahoma City*, see note 17, supra; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, see note 17, supra.

50. *ENI Producing Prop. Program Ltd. ex rel. Baytide Petroleum, Inc. v. Samson Inv. Co.*, 1999 OK 21, ¶ 11, 977 P.2d 1086; *Dismuke v. Cseh*, 1992 OK 50, ¶ 9, 830 P.2d 188.

51. *State Farm Fire & Casualty Ins. Co. v. Farmers Ins. Exchange*, see note 47, supra; *Harris v. Tipton*, see note 47, supra. See also, 15 O.S. 1991 § 235, note 47, supra.

HARGRAVE, C.J., HODGES, LAVENDER, OPALA, SUMMERS, BOUDREAU, and WINCHESTER, JJ. concur.

WATT, V.C.J., concurs in part and dissents in part.