450 F.3d 1115
 Connie RANDALL, Plaintiff-Counter-Defendant-Appellant,
v.
TRAVELERS CASUALTY & SURETY COMPANY, formerly known as Aetna Life and Casualty Company, Defendant-Counterclaimant-Third-Party Plaintiff-Appellee,
v.
The Estate of Richard D. Randall, Sr., Third-Party Defendant.
 No. 04-5031.
 United States Court of Appeals, Tenth Circuit.
 May 26, 2006.
 
 N. Franklyn Casey, Tulsa, OK, for Plaintiff-Counter-Defendant-Appellant.
 Philip Raymond Richards, Jason L. Glass, Richards & Connor, Tulsa, OK, for Defendant-Counterclaimant-Third-Party Plaintiff-Appellee.
 Before LUCERO, ANDERSON, and BRORBY, Circuit Judges.
 
 CERTIFICATION OF QUESTIONS OF STATE LAW
 
 1
 LUCERO, Presiding Judge.
 
 
 2
 The United States Court of Appeals for the Tenth Circuit, on its own motion pursuant to 10th Cir. R. 27.1 and Okla. Stat. tit. 20, §§ 1601-1611, hereby certifies to the Oklahoma Supreme Court the following unsettled questions of state law, which may determine the outcome of the above-captioned action pending before this court:
 
 
 3
 1. Does the principle, articulated in Alkire v. King, 183 Okla. 187, 80 P.2d 309 (1938), that the assignment of a life insurance policy conveys to the assignee a right to the proceeds even though the insured's estate was the named beneficiary, apply more broadly to contracts other than life insurance policies?
 
 
 4
 2. Does a decision by a tortfeasor to fund a settlement agreement by purchase of an annuity alter the assignable interest of a claimant thereunder in a manner that could affect the answer to question one?
 
 
 5
 This statement of certified questions is not meant to limit the inquiry of the Oklahoma Supreme Court, which under Okla. Stat. tit. 20, §§ 1602.1, 1604(A)(3), has reserved the authority to reformulate legal questions presented through the certification procedure. See Hammock v. United States, 324 F.3d 1155, 1156 (10th Cir.2003).
 
 FACTS
 
 6
 In 1984, Richard Randall, now deceased, executed a release and covenant favoring a predecessor of Travelers Casualty & Surety Company in order to settle a claim for injuries that had been caused by a driver insured by Travelers in a 1982 accident. Under the terms of the release and covenant, Travelers agreed to pay him a lump sum followed by 300 monthly payments of $1,250 commencing on execution of the release. In the event Richard Randall died before payment was complete, the covenants in the release provided that the remaining payments "will be paid on the applicable date to his estate." The agreement did not provide for a change of recipient of any residual payments due upon death.
 
 
 7
 Although the release and covenant did not call for separate funding of the payments due, Travelers purchased an annuity from Executive Life Insurance Company of New York, now Metropolitan Life Insurance Company ("MetLife"). Travelers was the owner of the annuity and designated "the estate of Richard D. Randall, Sr." as the primary beneficiary of the annuity. The annuity provided that the "beneficiary shall be the person the Owner [Travelers] names in the Application," unless changed by Travelers while Richard Randall was alive.
 
 
 8
 Two days before he died in 2000, Richard assigned "all of his right, title and interest" in the settlement agreement to his wife, Connie Randall. After his death, Connie Randall relied on this assignment to insist that the remaining payments be made to her. When Travelers responded that it was obligated to make payment, rather, to Richard Randall's estate, Connie Randall filed suit in state court alleging breach of contract and bad faith. Travelers removed the case to federal court and asserted a counterclaim/third-party claim for a declaratory judgment specifying the proper recipient of the funds yet to be paid under the settlement.
 
 SUMMARY OF LEGAL DISPUTE
 
 9
 Travelers' legal position is straightforward. It argues that an assignee obtains only those rights that the assignor had to convey. See Nat'l Bank of Commerce of Tulsa v. ABC Constr. Co., 442 P.2d 269, 276-77 (Okla.1966). The structured settlement here granted Richard Randall the right to that portion of the 300 monthly payments coming due during his lifetime. Richard Randall's assignment, then, granted Connie Randall the right to all of and only that same portion of the payments. Thus, when Richard Randall died, Connie Randall's interest expired and the rest of the payments were to be made to the estate pursuant to the express terms of the settlement.
 
 
 10
 Connie Randall acknowledges that a person cannot assign an interest he does not have, but she contends that Richard Randall's estate had no legal identity distinct from Richard Randall while he was alive. Thus, despite the explicit distributive language used in both the settlement agreement and annuity, Richard Randall possessed all interests nominally attributed to his estate, including the right to settlement proceeds left to paid at the time of his death. For this proposition, Connie Randall relies on Alkire v. King, 183 Okla. 187, 80 P.2d 309 (1938), which held that the assignment of a life insurance policy gave the assignee a right to the proceeds even though the insured's estate was the named beneficiary. While Alkire's specific holding may not be controlling, plaintiff points to its underlying rationale, citing the unity of interest between an insured person and his estate-beneficiary, to support her position that Richard's assignment of his interest in the settlement included any interest associated with his estate:
 
 
 11
 [T]he insured had all rights under the policy as it was issued. . . . No third person had any interest in this policy. It was payable to the estate of the insured. . . . Under such a policy all rights normally held by a beneficiary belonged to the insured. . . . The insured and his estate during his life do not constitute two separate and distinct entities; they are a single unit of ownership.
 
 
 12
 Id. at 309-10 (quoting Chartrand v. Chartrand, 295 Mass. 293, 3 N.E.2d 828, 830 (1936)).
 
 
 13
 Alkire's holding, that an unqualified assignment of a life insurance policy conveys the insured's ownership interest as well as the beneficial interest he controls if he has designated only his estate as beneficiary, is based on the unique unitary relationship between an insured and his estate-beneficiary. It is not clear if the same relationship exists between persons and estates per se. In the years since its issuance, Alkire has never been cited as establishing a general rule that persons and estates are indistinguishable entities for all (or indeed any other) purposes in contract law. It has never been invoked to nullify a generic contractual interest created directly in favor of an estate. Because special legal relationships among policy owners (particularly those retaining the power to change beneficiaries), beneficiaries, and assignees are recognized in the insurance context, material aspects of which may not be replicated in the contract setting involved here, guidance on Alkire's relevance beyond its immediate legal context is essential to the proper analysis of this case.
 
 
 14
 The second certified question acknowledges the possibility that Travelers' purchase of the annuity to finance the settlement might have transformed the contractual arrangement here into one replicating a life insurance policy. A structured settlement financed by an annuity was treated as an insurance policy, albeit for other purposes, in In re Kaufman, 37 P.3d 845, 850 n. 13 (Okla. 2001). There are two reasons why Kaufman's relevance here is uncertain. First, the point and import of the analogy to insurance were different in Kaufman than they would be here, and such differences in purpose could be material in assessing the appropriateness of the analogy. Second, Kaufman noted that the annuity had been "contemplated by" and purchased "[p]ursuant to" the settlement agreement, id. at 848, while here plaintiff stated that "[n]o such contemplation existed between the parties and of course the [settlement agreement] contains no language indicating that [Travelers] was going to fund the settlement agreement with an annuity."
 
 PROCEDURAL ORDERS IMPLEMENTING CERTIFICATION
 
 15
 We order this appeal stayed pending resolution of the questions certified above. We direct the Clerk of this Court to transmit a copy of this certification order to the parties and to forward a copy of this order, together with the parties' briefs (which also display the names and addresses of counsel of record, see Okla. Stat. tit. 20, § 1604(A)(4)), to the Oklahoma Supreme Court pursuant to Okla. Stat. tit. 20, § 1603.1. The treatment of any costs associated with the certification proceedings should be as prescribed by 20 Okla. Stat. tit. 20, § 1606.